ELLA PAULSEN, appellee, v. HENRY LOWELL PAULSEN, appellant.

## No. 47939.

(Reported in 50 N.W.2d 567)

DECEMBER 13, 1951.

White & White, of Harlan, for appellant.

G. O. Hurley, of Harlan, for appellee.

THOMPSON, J.—On July 12, 1948, plaintiff filed her petition in the Shelby County District Court, asking a divorce from defendant. The important allegation of her petition is contained in paragraph VI, which is set out in full:

"That since the marriage of plaintiff and defendant and for more than two years last past, defendant has without cause continuously deserted the plaintiff and has wholly failed and refused to live with her as her husband and has wholly failed and refused to support her."

Defendant answered, admitting the allegations of marriage and residence, and as to the two minor children; and stating in paragraph 4: "That he states that he has not lived with the plaintiff as husband and wife since May of the year 1946, but that he did not desert the plaintiff, but has lived separate and apart from her for just and proper grounds."

Defendant at the same time cross-petitioned, praying for a

divorce from plaintiff. Count I of his cross-petition alleges cruel and inhuman treatment; Count II charges plaintiff with adultery committed between December 27, 1947 and April 5, 1948, with one H. C. Cameron at a given address in Omaha, Nebraska.

Plaintiff answered each count of the cross-petition. As to Count I she denies the allegations of cruelty, and says:

"Further answering Count I of the cross-petition the defendant in cross-petition alleges that the plaintiff in cross-petition has been guilty of such cruel and inhuman treatment toward the defendant as to endanger her life and health; that he has beat her and knocked her down; called her vile names; wrongfully accused her of immoral acts; failed to support her and has refused to let her see her children or enjoy the company and companionship of them; and has deserted her for more than two years last past."

Her answer to Count II is confined to a denial of the adultery charged.

The cause came on for trial on June 6, 1949, and evidence was introduced by each party. On December 3, 1949, the trial court entered his findings of fact, conclusions of law and decree, granting a divorce to plaintiff and dismissing defendant's cross-petition. The custody of the two minor children was given to the defendant, "so long as they are left in the home of their paternal grandparents." Costs, including a fee to plaintiff's attorney in the sum of $250, were taxed against defendant. Plaintiff does not appeal from the custodial part of. the decree, which was adverse to her.

I. First to be considered is the question of the right of plaintiff to a decree upon the ground of desertion. By her pleadings she plants herself squarely upon that ground and no other. Apparently by way of recrimination to Count I of defendant's cross-petition—the count alleging cruel and inhuman treatment —she pleads various acts of supposed cruelty committed by defendant against herself.

We are of the opinion that the trial court rightly dismissed Count I of the cross-petition; and further, that plaintiff's own evidence as to cruelties practiced upon her would not have amounted to a sufficient showing to entitle her to a divorce.

Neither showed any danger to life or health. Consequently we need not set out the matters of which the respective parties complain at this point. Neither was free from fault. Plaintiff's evidence tends to show blows struck by the defendant on two occasions, lack of proper support for herself and the two little girls, and some alleged illicit relations between defendant and an unnamed "girl at Fort Dodge." The latter charge is uncorroborated and is vigorously denied. There is also some evidence of excessive drinking by defendant; but since under the pleadings this, as well as all other charges of cruel and inhuman treatment, can go only to the question of cruelty pleaded as a recrimination against Count I of the cross-petition, and we hold that this count was properly dismissed, we shall not consider them further except as they bear upon defendant's intent to desert.

II. The parties were married March 29, 1936, at Blair, Nebraska. They have two children, Leona Mae Paulsen, age twelve at the time of the trial, and Betty Ann Paulsen, then age ten. The defendant was either eighteen or nineteen years of age at the time of the marriage; plaintiff had been previously married and divorced, and is two or three years older than defendant. Whether because of the prevailing economic depression at the time of and for some years after their marriage, or because of defendant's lack of industry and initiative, or both, the parties found living conditions difficult, and any kind of security, even for brief periods, out of their reach. They moved from point to point in western Iowa and eastern Nebraska, with defendant holding various short-lived jobs, plaintiff working as a waitress or bar-girl in taverns, and the social welfare workers aiding materially in keeping the wolf at least slightly removed from the various doors behind which the family found temporary shelter. Plaintiff's counsel urges that this failure of defendant to provide anything like a permanent home, or adequate support, together with the alleged cruelties referred to above, shows an intent to desert. It is true that they have some probative force, but they are not sufficient in themselves to show willful desertion. The language of the statute applicable is this, section 598.8, Code of 1950:

"Divorces from the bonds of matrimony may be decreed against the husband for the following causes:

"\* \* \*

"2. When he willfully deserts his wife and absents himself without a reasonable cause for the space of two years."

The first problem with which we are faced here is that of determining whether plaintiff has shown by a preponderance of the evidence that defendant had committed the marital offense above-defined so that it was complete at the time the case at bar was commenced.

Mere living apart is not in itself sufficient to establish desertion as a ground for divorce. Carr v. Carr, 212 Iowa 1130, 1132, 237 N.W. 492. In the instant case the defendant entered the military service of the United States in November 1944, and, with only a short interval about Christmas of 1945, remained therein until he was honorably discharged in December 1946. Necessarily, he was away from his family during most of that time. During all, or nearly all, of it, he contributed to the support of his wife and daughters through an allotment of $100 per month, of which $50 was for the plaintiff.

Plaintiff's own evidence is so vague in reference to dates that we are unable to determine when she claims the desertion period began. Her petition says only that it had existed for more than two years prior to the commencement of the action, and the court's decree finds accordingly. Her counsel argues that the period was completed before December of 1947, a date to which later reference will be made. The record shows lack of harmony between the parties for some years, beginning, perhaps, about the year 1943. But they lived together after that, and after two divorce suits which plaintiff commenced and abandoned. If we were compelled to find the fact from plaintiff's case alone we should be hard put to fix any definite date when the desertion is thought to have commenced. Her counsel said in oral argument that he had supposed the separation was admitted by the pleadings, and that the only question involved is whether defendant had "reasonable cause" for leaving. We have set out paragraph 4 of defendant's answer, in which he admits living apart from plaintiff since May of 1946, but says he had "just and proper grounds" therefor. The date is the only definite one given us on this point, and we accordingly accept it as the one upon which

the separation of the parties took place, with the intent on the part of the defendant not to return.

Here arises an interesting contention of the defendant which must be recognized, but which we think we need not determine. He says that no desertion time could accrue while the husband was contributing to the wife's support through an allotment from the United States. In Moltz v. Moltz, 182 Va. 737, 741, 30 S.E. 2d 561, 563, where a similar situation existed, the court remarked: "Certainly this husband did not desert his wife when he went into armed service. Her allotment had not been discontinued." On the other hand, 27 C. J. S., Divorce, section 36a, page 564, says that, although there is authority to the contrary, the general rule is that there may be a cessation of cohabitation and a consequent desertion in spite of the fact that the husband contributes to the wife's support. Cited are three cases, of which only one, Young v. Young, 94 N. J. Eq. 155, 119 A. 92, 25 A. L. R. 1049, is in point. Benton v. Benton, 214 Ala. 321, 107 So. 827, holds only that payment of support money pendente lite does not toll the running of the desertion period; and Doty v. Rensselaer County Mut. Fire Ins. Co., 194 App. Div. 841, 185 N. Y. S. 466, was decided under a statute so far different from ours that it has no significance. Our own decisions, so far as they can be analyzed, seem to support the thought that payment of support money interrupts the running of the period. We said in Kupka v. Kupka, 132 Iowa 191, 192, 109 N.W. 610, that: "To constitute desertion there must be not only a separation, but an intent to cease to live together as husband and wife, *an abnegation of all the duties of the marriage relation.*" (Italics supplied.) This was referred to with approval in Tipton v. Tipton, 169 Iowa 182, 151 N.W. 90, Ann. Cas. 1916C 360. Whether one of "the duties of the marriage relation" is that of the husband to support the wife so far as his ability permits, within the meaning of the two last cited cases, we need not and do not determine for reasons hereinafter made apparent.

We have held above that there was not a separation with intent on the part of the defendant to abandon the plaintiff until May of 1946, which date, however, was more than two years prior to the commencement of this action. We are of the opinion that the reasonable ground which defendant thought he had at

the time is not substantiated by the evidence. The record shows adequately that plaintiff had been going out to a considerable extent with other men while the defendant was in the military service. But this conduct, while ill advised and tending to show a disregard for her marital duties and responsibilities, does not seem to us to be flagrant enough to give defendant ground for divorce, or even reasonable cause for desertion.

III. But another issue arises at this point, which makes our determination of the time when the two-year desertion period commenced to run vital in the case. Defendant in his cross-petition, Count II, charges plaintiff with adultery, committed from December 1947 to April 1948. This is within two years of May 1946; and, if proven, is sufficient to constitute good cause for separation, even though such cause did not exist at the original date thereof. The reason is that the parties may become reconciled, or the erring spouse may decide to return at any time during the two years. Accordingly, any conduct of the original innocent spouse during such period which gives the guilty one reasonable cause for separation stops the running of the time. Wilson v. Wilson, 40 Iowa 230, 232; Dupont v. Dupont, 10 Iowa 112, 74 Am. Dec. 378. In the Wilson case, supra, this court said:

"Conceding that the desertion of the plaintiff by the defendant was without reasonable ground, we are clearly of opinion that the court erred in the legal consequences which he attached to it. Before the defendant had been absent long enough to entitle plaintiff to a divorce on the ground of desertion, he was guilty of adultery, which rendered her return repugnant to every natural feeling, and justified her further absence."

On the other hand, if the desertion had been complete, or if a cause of action had accrued to plaintiff, before the commission of the adultery, upon any other ground, such as cruel and inhuman treatment, neither party would be entitled to a divorce. We are committed to the doctrine of recrimination, that is, if the evidence shows each party to be guilty of an offense which would give the other a right to a divorce, it must be denied to each. "If both parties have a right to divorce, neither party has." Hoffman v. Hoffman, 43 Mo. 547, 549. The rule

has been criticized, but seems firmly established in Iowa. 28 Iowa Law Review 341–349, inclusive. We do not recognize the principle of "comparative rectitude", which seems to exist only by statute in a few jurisdictions.

IV. It remains to determine whether the defendant has proven his charge of adultery. It appears that in the latter part of December 1947 the plaintiff, who was then unemployed, was sent to the home of H. C. or Hugh Cameron, in Omaha, Nebraska, by the Douglas County Welfare Administration. Cameron's wife was seriously ill with tuberculosis, and was in a state sanitarium at Kearney, Nebraska. He had three small children who needed care. The welfare administration had previously arranged for one Arlene Specht and her then husband to move into the Cameron home where Mrs. Specht was to keep the house and see to the needs of the children. However, the Spechts were not ready to take over their duties and plaintiff was sent in on a temporary basis. She says: "Mrs. Smith [a relative of Cameron] took me out to Camerons. * * * I was supposed to stay there for a few days. I went merely on a temporary basis." She had known Cameron for some months before, having met him at a tavern and gone on a hunting trip with him, and others. The Spechts arrived about December 27 and remained until April 5, 1948. But, although her period of service had been due to terminate with the coming of the Spechts, like the man who came to dinner, she stayed on. In fact, so far as the record shows she was still there at the time of the trial. Some difficulty developed between her and Mrs. Specht. She accused the latter of coming home drunk at night, and of "padding the grocery bill."

Testifying by deposition, Arlene Specht says that the plaintiff occupied the same bedroom, and bed, with Cameron while the witness was there; that she kept her clothing in the closet in his bedroom, and that she saw them in bed together. Her testimony is corroborated by Leona Mae Paulsen and Betty Ann Paulsen, the two minor daughters. They had been making their home with their paternal grandparents and were with them at the time of the trial. But during the Christmas holidays of 1947 they visited their mother at the Cameron domicile in Omaha. Each testifies that she saw her mother in bed with Cameron in the early morning. Leona Mae, the older daughter, who was

twelve at the time of the trial, qualified her statement on cross-examination to this extent: "I said this Cameron boy slept with his father, he was out on the couch when I went in. I couldn't find mother and somebody was sleeping with him so I left them alone. Q. Do you know it was your mother? A. Wasn't anybody else there." The younger daughter, Betty Ann, ten, was even more emphatic. She testified:

"I remember the occasion of my coming down and starting to go into the downstairs bedroom. We was going to ask mother a question, she wasn't up there so we went down there and she was laying with Hugh Cameron, was in bed with Hugh Cameron. I don't know if they were asleep or not, we just left them alone. We saw she was in there and we left them alone. They were both in bed, had their night clothes on."

The trial court thought that the daughters had been coached by the defendant or the grandparents with whom they lived. While we recognize the rule that his finding is entitled to much weight as to these witnesses, it is not conclusive; and so far as we can judge from the printed page we must conclude that they were telling the truth. We cannot agree that their testimony is improbable. Each told a straightforward story, which has the ring of genuineness. The court found that the testimony of Arlene Specht was prompted by malice and a desire for revenge. It will be noted that this witness was not before the court, but testified by deposition. So we have an equal opportunity to judge of the veracity and credibility of her story. It is evident that if we are not to find plaintiff guilty of adultery it must be because all three of the witnesses above referred to are guilty of perjury. The unequivocal nature of the testimony of each leaves no room for an assumption of mistake. We cannot disregard it, and it leads directly to the conclusion that it supports defendant's charge of adultery. The circumstances detailed lead naturally to a conclusion of guilt. Sido v. Sido, 242 Iowa 950, 957, 48 N.W.2d 799, 802, 803; Crilley v. Crilley, 228 Iowa 422, 292 N.W. 67; Leupold v. Leupold, 164 Iowa 595, 146 N.W. 55.

There are also supporting circumstances. We have already referred to the fact that plaintiff stayed at the Cameron house after Mrs. Specht appeared. Her explanation of this is that the

welfare administration wanted her to stay until it was known whether Mrs. Specht's services would be satisfactory. This developed into more than three months, during which time both women were living in the home. There is also the fact that Cameron was not called as a witness by the plaintiff, nor was his deposition taken, although he was in Omaha and available. Plaintiff was accused of a flagrant marital offense, and it seems should have been diligent, even eager, in producing any evidence to substantiate her own denial. Yet the at-hand testimony of the alleged other actor in the matter was not produced. In State v. Cotton, 240 Iowa 609, 625, 33 N.W.2d 880, 889, we quoted with approval from Blatch v. Archer, 1 Cowper 63, 65:

" 'All evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted.' "

Justice Bliss' opinion in the Cotton case also refers to several other Iowa cases in which the same principle has been upheld; and in Kenyon v. Kenyon, 88 Hun 211, 34 N. Y. S. 720, in an identical situation, the failure of the spouse against whom adultery was charged to call the named corespondent was held to create a presumption against her. The whole record is such as to sustain the allegations of Count II of the cross-petition by a clear preponderance of the evidence.

We are satisfied that that part of the court's decree concerning the custody of the children and the allowance of fees to plaintiff's counsel was proper. The cause is reversed and remanded to the district court with directions to enter a decree dismissing plaintiff's petition and granting a divorce to defendant upon his cross-petition, without change in the other provisions of the present decree except as to taxable costs.— Reversed.

All JUSTICES concur.