ARTHUR R. KENTZELMAN, appellant, v. BESSIE L. KENTZELMAN, appellee.

No. 48349.

(Reported in 63 N. W. 2d 194)

March 9, 1954.

Siegers & Bedell, of Newton, for appellant.

Brierly & McCall, of Newton, for appellee.

HAYS, J.—Divorce action wherein by petition and cross-petition each party asks for a divorce from the other on the ground of cruel and inhuman treatment such as to endanger life. Also involved is the custody of their ten-year-old son, Ronald. The trial court dismissed plaintiff's petition and granted defendant a divorce, custody of the child, also alimony and support money. Plaintiff has appealed.

Plaintiff, age 52, and defendant, age 42, were married in December 1939, at Independence, Missouri. Plaintiff had been divorced twice—in 1933 in Chicago, and in 1939 at Des Moines. Defendant had been divorced at Newton, Iowa, in 1938. They had known each other for a number of years, and for some time prior to defendant's divorce he had lived at her home.

Prior to and since their marriage, both have used intoxicating liquor, the plaintiff to a far greater extent than defendant. They always had liquor in the home but there is little evidence of intoxication. They both often used vulgar and profane language about the home and sometimes in the presence of the son. However, the child appears to be well cared for and plaintiff, who has above the average earning capacity, has provided them with a good living.

Plaintiff, who has for a number of years been afflicted with stomach ulcers, attributes them to worry and nervousness over his wife's conduct both in and out of the home. It appears that since 1931 the defendant has suffered from eczema on her hands and arms. Since the marriage she also has met with accidents requiring hospitalization. Many times the sink would be filled with dirty dishes and the beds not made. Plaintiff admits that part of this was due to her illness. It is claimed that she failed to provide him with meals according to his prescribed diet, thus forcing him to eat most of his meals at restaurants. He also complains of his wife's extravagance; that when married he was not in debt but that now there is $6000 in debts outstanding.

However, the chief complaint appears to be directed at his wife's personal conduct. It appears that in 1942 or 1943 she, with other women, organized an auxiliary to the Red Men's lodge of which he was a member. She joined a drill team and thereafter was absent from home a great deal, especially at night. He received several anonymous letters concerning her conduct with other men; and when asked about it, she would deny it and say someone was trying to make trouble. While the names of several men appear in the record, the name of Jack Ford runs through the entire period. Jack Ford, age 39, is the half brother of Elsie Bigney who for years has been a close associate of defendant. He lived with his sister until shortly before this case was commenced in 1951. There is considerable testimony tending to show that Ford was a frequent visitor at plaintiff's home; that he and defendant often met at the sister's home and went on various trips with the defendant and others. Several witnesses testify as to their hugging and kissing each other. In 1948, defendant opened a café which she ran about a year. It was often midnight

when it closed and she would take a taxi home. Very often Jack Ford would be at the café at closing time and would ride in the taxi with her to a point near where he lived and she would go on home. Although both plaintiff and Elsie Bigney talked with defendant and Ford, this relationship continued apparently to the time of trial. While plaintiff contends defendant often kicked, hit and scratched him, these occurred some time ago, are not corroborated except in two instances, and they appear to be about a draw between them.

Defendant contends that plaintiff frequently was gone from home overnight and when questioned would say it was none of her business. She received phone calls telling her to watch her husband and a woman named Doris Kling, who worked in the same department at the Maytag Company, as did plaintiff. There is other evidence tending to connect the two. Also, the name of Mrs. Darlene Simmons appears prominently in the record. The two have been seen together many times, especially since plaintiff and defendant separated. In August of 1951, defendant found plaintiff and Mrs. Simmons in his car at the Isaac Walton League Club drinking beer. Quite a fight took place between plaintiff and defendant in which blows were struck and foul language indulged in. Both Mr. and Mrs. Simmons, as well as the plaintiff, state that the three of them went to the club and drank beer in the car; that just before defendant came, Mr. Simmons left the car and went into the clubhouse. Also in 1951, plaintiff, Mrs. Simmons, and her two children, a girl, age 11, and a boy, age 9, spent two weeks in a cabin in Minnesota. She slept with the girl, he with the boy. They registered as Mrs. Simmons and two children, and Mr. Kentzelman. It appears that Mr. Simmons suggested that plaintiff take them on the fishing trip and paid half of the expenses. In 1945, plaintiff accused the defendant of giving him gonorrhea. The record is rather vague but we think it fair to say that he was so affected but that probably defendant was not.

They lived together as husband and wife until in 1949. Thereafter they occupied separate rooms until plaintiff left in August of 1951. While we have not set forth all of the charges and countercharges set out in the record, we think the foregoing is a fair statement of the basic facts.

The question presented by this appeal is primarily one of fact and our decisions in other cases are of little assistance. However there are certain legal principles that are basic and applicable in all such cases. Inhuman treatment such as to endanger life may exist even in the absence of force and violence; Zuerrer v. Zuerrer, 238 Iowa 402, 27 N.W.2d 260; Levis v. Levis, 243 Iowa 574, 52 N.W.2d 509. It is necessary to consider the entire record of their married life and not a few isolated instances. Meyer v. Meyer, 169 Iowa 204, 151 N.W. 74; Murray v. Murray, 244 Iowa 548, 57 N.W.2d 234. It is also basic that condonation, to be available, must be pleaded; which was not done in this case by either party. Also applicable here is the established maxim that "he who seeks equity, must do equity."

As before stated, the trial court dismissed plaintiff's petition and awarded a divorce to defendant. While we recognize and adhere to the rule that we give serious consideration to the decision of the trial court, we have never given it the force and effect of a finding of fact in a law action. In the instant case we are unable to accept the trial court's decision and feel that the same must be reversed.

Most of the acts complained of by both parties happened long before they ceased living together, including that concerning gonorrhea. Each has been guilty of extreme indiscretion to say the least; although, under the record, the trial court was right in refusing each party the right to amend his pleading to charge adultery. Neither party apparently considered the conduct of the other over the years, such as to endanger his life, until the fight at the Isaac Walton League Club in August 1951. We think what was said in Paulsen v. Paulsen, 243 Iowa 51, 50 N.W.2d 567, 571, is particularly applicable. At page 57 thereof, we said:

"We are committed to the doctrine of recrimination, that is, if the evidence shows each party to be guilty of an offense which would give the other a right to a divorce, it must be denied to each. * * * We do not recognize the principle of 'comparative rectitude', which seems to exist only by statute in a few jurisdictions."

584

We think, under the record, that each has been guilty of acts which might well be sufficient. to warrant a divorce to the other party; but that, under our rule of recrimination, neither may obtain same. It appears to be a sort of "fifty-fifty proposition."

For the reasons above set forth the decision of the trial court is reversed and remanded with instructions to dismiss the petition and cross-petition. Costs in both courts to be taxed two thirds to plaintiff, one third to defendant, with order for attorney fees to stand as made by the trial court.—Reversed and remanded.

All JUSTICES concur.