CLAUDE LEIGH, appellee, v. FERN LEIGH, appellant.

No. 48821.

(Reported in 73 N.W.2d 727)

DECEMBER 13, 1955.

Kindig & Beebe, of Sioux City, for defendant-appellant.

Harry H. Smith, of Sioux City, for plaintiff-appellee.

LARSON, J.—Plaintiff, age 49, and defendant, age 39, residents of Sioux City, Iowa, began living together as man and wife in the spring of 1941. Although they had separated for a short time about two years prior to these proceedings when each filed

and later dismissed divorce actions against the other, the parties continued to live together until shortly before the commencement of this action July 13, 1954. The plaintiff's petition alleged cruel and inhuman treatment, as did defendant's cross-petition for separate maintenance. There were no children by this union, though both have issue by former marriages. Following a somewhat prolonged trial, the court entered a decree finding the allegations of plaintiff's petition as amended had been proven, and granted him an absolute divorce. The court further provided for a division of their common property. The first part displeased the defendant, and the second part the plaintiff. Both appeal.

In defendant's appeal she relies upon five propositions for reversal: (1) that the plaintiff failed to sustain his burden of proving defendant was guilty of inhuman treatment such as to endanger his life; (2) that the trial court erred in failing to find the doctrine of recrimination applicable; (3) that the court erred in admitting evidence of defendant's misconduct which occurred after the commencement of this divorce action; (4) that the court erred in failing to grant appellant separate maintenance; (5) that the court was in error in finding that there had been a condonation of plaintiff's alleged conduct, and by failing to find any conditional condonation had been vitiated by plaintiff's subsequent conduct.

In his cross-appeal plaintiff maintained the court was in error in not dividing equally all the household furniture and livestock, as it did other property, after making a finding that all the property was acquired during marriage by the joint efforts of the parties.

In this equity matter we shall consider these complaints in substantially that order. There is little dispute as to the law involved, the complaints being as to the sufficiency of the facts disclosed by the competent and material evidence.

I. Precedent is of little value in the determination of cases of this character, for in each we find a different factual situation. Kovar v. Kovar, 237 Iowa 251, 21 N.W.2d 534, and cases cited therein; Littleton v. Littleton, 233 Iowa 1020, 1024, 10 N.W.2d 57, 59; Fisher v. Fisher, 243 Iowa 823, 53 N.W.2d

762, and cases cited therein. We said in Littleton v. Littleton, supra: "Mistreatment * * * which deprives a person of needed rest and peace of mind, may so affect his nervous system and bodily functions as to undermine his health and thereby endanger his life as effectively as blows or bodily abuse, whether the victim be a man or a woman." In Craig v. Craig, 129 Iowa 192, 194, 105 N.W. 446, 447, 2 L. R. A., N. S., 669, Judge Deemer, speaking for this court in a case where the husband-defendant became infatuated with another woman and openly flaunted his illicit relations to his wife, said: "Such wounds are deeper and more dangerous to health than blows, more harassing than profane language, and more distressing than vulgar talk."

■ Without setting out in detail all of the evidence produced by the plaintiff, we think there was substantial evidence to justify a finding by the court that defendant had made threats of physical violence toward plaintiff, once with a butcher knife and once with an iron rod "four or five feet long", and had worried him with the threat that the boys were going to throw him "in the river for fish food", and that his fear for his health and life was not unfounded; that defendant was addicted to drunkenness, sometimes two or three times a week; that she was addicted to the use of vile, indecent and obscene language; that she was nagging and harassing; and that the evidence was convincing that she had engaged in promiscuity, immoral and obscene conduct, and was guilty of continued infidelity. Substantial corroboration was furnished showing defendant's relation with various other men over a long period of time, including the last two years, which indicated infidelity and adultery on her part, as well as the fact that she taunted plaintiff with those implications continually. That such taunts were designed to and did cause plaintiff mental anguish cannot be doubted. We care not to repeat this evidence, but are content with the trial court's conclusion that it sustained plaintiff's allegation of such cruel and inhuman treatment as to endanger his life and health.

■ II. Defendant, however, contends plaintiff's conduct was shown to be no better than her own, and the doctrine of recrimination plus his failure to come before the court with clean hands bars his claimed relief. The doctrine of recrimination is

applicable in Iowa. Kentzelman v. Kentzelman, 245 Iowa 579, 63 N.W.2d 194, and cases cited therein. It is true the evidence introduced is substantial that plaintiff, prior to the past two years, did use physical violence upon defendant, did strike her and break her jaw, did have improper relations with one Dora Fender, did get intoxicated, and did engage in quarreling and fighting with defendant. One witness said: "It was about even on the fighting and quarreling they did." But this same witness also said she had not actually seen Mr. Leigh use any violence against defendant in the last couple of years. Another witness, who had observed the relations between plaintiff and Dora Fender, said the last time he observed them together was "about two years ago when the last divorce suit was pending." It is true, unless it appears that some rather substantial changes had occurred in plaintiff's behavior during the two last years, the doctrine of recrimination would apply and relief must be denied both parties hereto. But we agree with the trial court that such changes were disclosed by the record.

III. Plaintiff, recognizing the possibility of his past fault, has pleaded and contends herein that he has established by a preponderance of the credible evidence that his fault, if any, had been condoned by defendant. He contends, while he had also condoned her past fault when they returned to live and cohabit together some two years before, she had persisted in her evil ways, even though he had sinned no more but had conducted himself as a true and dutiful husband toward her.

The burden of proof on a plea of condonation is, of course, upon the person asserting it. Zuerrer v. Zuerrer, 238 Iowa 402, 27 N.W.2d 260. We have often stated the rule that condonation is a conditional, rather than an absolute, remission of the offense, the implied condition being that the offense will not be repeated. Duwe v. Duwe, 246 Iowa 1336, 1338, 72 N.W.2d 501, 503; Robbins v. Robbins, 234 Iowa 650, 12 N.W.2d 564, and cases cited therein. It must appear the objectionable conduct and acts have been materially eliminated after condonation. Therefore, the principal question before us is whether plaintiff has produced substantial and convincing evidence of condonation which was not nullified thereafter.

There was no denial of the fact that they each knew of

the other's improper conduct when they returned to live and cohabit together after the prior divorce proceedings were dismissed. The record also indicates a material change in the conduct of the plaintiff after the parties returned to live together. No further association with Dora Fender appears. Only on two or three instances was he even known to have been in her presence, and then not under suspicious or unexplained circumstances. Several others were also in the group on those occasions. No evidence of continued threats or violence appears, though their arguments did not cease. They did not seem to object to this vocal exercise. It is true any subsequent conjugal unkindness will avoid condonation, even though such unkindness be less than extreme cruelty. Hickman v. Hickman, 188 Iowa 697, 699, 176 N.W. 698, 14 A. L. R. 929. But did any of the acts plaintiff continued to do amount to such unkindness? Under the circumstances related, we think not. One of defendant's chief complaints was that he stayed out all night on occasions. The last time he did so she had him arrested when he returned, which was just before they parted. When the officers arrived at their home he was taken to the station and booked on an intoxication charge. He denied the charge, but forfeited his bond and did not contest the case. His explanation was that he was out fishing, his favorite pastime since he had become physically disabled and could not work. He contends the arrest was a further effort of defendant to harass him and he decided then to file this action.

In matters of this nature we are disposed to give serious consideration to the finding and decision of the trial court. Massie v. Massie, 202 Iowa 1311, 1312, 210 N.W. 431, 432, and cases cited therein; Robbins v. Robbins, supra. The trial court saw these witnesses and heard their testimony, and its conclusion that a condonation had been established and was not nullified by any subsequent alleged acts of cruelty by plaintiff should not be disturbed. We find that conclusion substantially justified by the record.

It is true plaintiff's ardor for past indiscretions may have been dampened by his physical condition. He had a heart condition, he suffered from pyelitis, cystitis, and recently under-

went a hernia operation. The doctor told him he had only one to five years to live. But whatever the cause of his reformation, we believe the evidence justified finding the condonation valid and effective.

IV. Defendant complains that evidence of her conduct subsequent to the date plaintiff's petition was filed was erroneously accepted into the record. But as a result of her cross-petition for separate maintenance, this evidence of her conduct was material as relating to her freedom from any fault. Her basis for relief also must be predicated upon plaintiff's condonation of her faults and upon her reformation. The evidence of improper relations after the date of the petitions was therefore material to show a failure of a conditional condonation by plaintiff of her past similar misconduct. There was no error in accepting this testimony. In addition, defendant's attorneys had timely notice of this evidence. It appears a period of three weeks elapsed between the submission of plaintiff's and defendant's evidence. No prejudice due to its late discovery could therefore have been suffered by the admission of that evidence. Ample time for its rebuttal appears.

V. It follows from what has been said that defendant was not entitled to a decree of separate maintenance and the court did not err in so deciding.

VI. We find no merit in plaintiff's cross-appeal complaining as to the property division. The able trial court observed the parties who were before it and could make such disposition of the property as it thought correct under the circumstances, these circumstances being their ages, health, sex, earning capacities and obligations, as well as give some consideration as to who made the major contribution toward the accumulation of the property jointly acquired. These things the trial court evidently considered and, unless abuse of this discretion appears, we will not disturb the trial court's determination. Zuerrer v. Zuerrer, supra; Nelson v. Nelson, 246 Iowa 760, 68 N.W.2d 746. We find no such abuse here, for the defendant was given but slightly more than half the property and the division was justified. If we can glean anything from between the lines of the record, it would be that defendant was the better breadwinner and,

were it not for her fault, she may have received a greater percentage of the jointly-owned property. We conclude the division was ultimately fair and just.

 VII. Plaintiff further contends defendant's appeal should have been dismissed for it appears she sold some livestock which had been left in her possession after the decree in this matter was rendered, and without first having obtained court permission. He contends she must be held to have accepted the court's decision by this act, for the same livestock was given her under the decree. This she denies and contends she holds the receipts of the sale for the final determination of this appeal. It is hornbook law that one may not accept material and substantial benefits under a divorce decree and be permitted to appeal therefrom. However, here the explanation made by defendant must be accepted that, though she was in error in not first obtaining court permission to sell and dispose of the livestock, she could not be expected to neglect it nor retain it under conditions which would be unreasonable. Her explanation of being unable to care for the heifers about to calve must be accepted, especially since she has retained the proceeds in place of the property pending further court order, and there is no showing that she actually converted the receipts to her own use.

 We prefer to consider this case on its merits, for the court does not look with favor on the practice of granting divorces by estoppel. Therefore, plaintiff's motion which had been submitted with the appeal must be overruled.

Finding no reversible error herein, the decision of the trial court granting plaintiff an absolute divorce and equitably dividing the parties' property should be affirmed.—Affirmed.

All JUSTICES concur.