GARRIETTA JACKSON, appellant, v. ARCHIE JACKSON, appellee.

No. 49242.

(Reported in 85 N.W.2d 590)

OCTOBER 15, 1957.

Morse Hoorneman, of Le Mars, and William A. Shuminsky, of Sioux City, for appellant.

Spencer M. Day and Kindig & Beebe, all of Sioux City, for appellee.

PETERSON, J.—On June 29, 1954, plaintiff filed in the District Court of Plymouth County a petition against defendant for separate maintenance on the ground of inhuman treatment. She prayed for custody of the two girls of the parties, at that time eight and three years old respectively, and for alimony and support money. Defendant filed answer and cross-petition praying for divorce and for custody of the two little girls. Plaintiff alleged in her petition, and it was admitted in defendant's answer and also alleged in his cross-petition, that the parties were married in Los Angeles, California, on September 16, 1944. On February 22, 1946, the older girl, Pidgeon, was born in California. In 1948 the parties moved to Remsen, Iowa. Defendant became associated with his brother in a tavern business at Remsen. He purchased a basement home for the family. In 1950 he disposed of his interest in the business at Remsen and purchased a night club at Le Mars, Iowa. The name of the club is "Waeside." During his first year at Le Mars, plaintiff and Pidgeon continued to live in the basement home at Remsen. Defendant rented an apartment in Le Mars. Plaintiff came to Le Mars occasionally with the little girl for visitation. In 1952 the parties sold their equity in the home in Remsen for $1500, which amount they divided equally. In the meantime, defendant had converted a garage, located on the same lot as the night club, into a small modern home. In 1951 a second little girl was born to the parties. She was named Marilyn, but was always called "Punkin." The case was first tried in November 1954, and on November 18, 1954, the trial court entered what should perhaps be called a preliminary decree. The court dismissed plaintiff's petition for separate maintenance, granted defendant a divorce and at that time granted temporary custody of the two little girls to defendant, with right of visitation on the part of plaintiff. Plaintiff was granted alimony in the amount of $200 per month and defendant was ordered to pay plaintiff's attorney $200 temporary attorney fees. In the decree the court specifically provided that the case should again be heard on April 25, 1955,

as to custody of children, alimony and attorney fees for plaintiff's attorneys. On April 14, 1955, the trial court addressed a letter to all attorneys in the case stating that he had made an unannounced call at the home of defendant and had a visit with the two children and as a consequence of such call he canceled plaintiff's visitation rights. The second trial of the case was held on May 31, 1955, and further evidence was offered by both parties. After the hearing the court filed what he called a supplemental decree on June 14, 1955, in which he granted custody of the two little girls to defendant; gave plaintiff judgment for alimony in the amount of $150 per month for six months, $100 per month for the next six months and $50 per month for the third six months, or a total of $1800. The court granted an additional attorney fees allowance in favor of plaintiff's attorneys in the amount of $550 and canceled the visitation rights of plaintiff as to the two little girls "until further order of this court." On June 29, 1955, plaintiff served notice of appeal. Defendant filed motion to dismiss the appeal on the basis of notice of appeal being served too late. Order of this court was entered that the motion be considered in connection with submission of the case.

On the basis of appellee's motion to dismiss and appellant's assignment of errors we have five questions to consider: 1. Should the appeal be dismissed for failure to serve notice of appeal as provided by statute and rules? 2. Was the ruling of the trial court correct in dismissing plaintiff's petition for separate maintenance? 3. Does the evidence sustain the decree of divorce in favor of defendant? 4. Which party is entitled to the custody of the children and what should be the order of court concerning visitation rights? 5. Is appellant estopped from raising any question concerning alimony, on her appeal, in view of collection and acceptance of the alimony payments ordered by the trial court?

I. Appellee contends the decree of November 18, 1954, was a final decree and notice of appeal should have been filed by appellant within thirty days after said date. He filed motion to dismiss on this ground, which we ordered submitted with the case. It is axiomatic and jurisdictional that a notice of appeal must be given within thirty days from final order. Rule 335, Rules of Civil Procedure; Mollring v. Mollring, 184 Iowa 464,

167 N.W. 524. However, when the court in what perhaps should be called a preliminary decree specifically reserves substantial and material matters for future determination the right of appeal is preserved until final action of the court. Phillips v. Catterson, 235 Iowa 715, 17 N.W.2d 517; Wolf v. Lutheran Mutual Life Ins. Co., 236 Iowa 334, 18 N.W.2d 804; Mollring v. Mollring, supra.

In the decree of November 18 the court said: "Jurisdiction of this matter is retained by this court and hearing shall be held on the 11th day of April 1955 * * * and shall thereupon enter a further decree in relation to future alimony, custody of said minor children, costs of this action and plaintiff's attorney fees." The matters postponed by the court are such integral parts of the case that the postponement of hearing and future decision as to said matters are part of the case.

The provision of R. C. P. 331(a) is: "All final judgments and decisions of courts of record, and any final adjudication in the trial court under rule 86 involving the merits or materially affecting the final decision, may be appealed to the supreme court, * * *." In the case of Mollring v. Mollring, supra, we considered a similar question and stated at page 467 of 184 Iowa, page 526 of 167 N.W.: "Before plaintiff attempted to dismiss without prejudice, the case had been reopened, but, to be sure, for the avowed purpose of taking testimony on the question of custody only. Notwithstanding this limitation, it is manifest that, when both parties adduced testimony on who should have the custody, it must have been anticipated that such testimony might bear on whether plaintiff was entitled to a divorce. * * * In one word the reopening of the case for taking this testimony was a sufficient reopening to avoid final submission."

We hold the supplemental decree of the trial court filed June 14, 1955, was the final order in this case and the appealable date as to the complete decision of the court composed of the decree entered on November 18, 1954, and supplemental decree entered June 14, 1955, was within thirty days of the latter date as to all matters contained in both sections of the court's decree. Notice of appeal filed June 29, 1955, was timely. The motion to dismiss the appeal is overruled.

■ II. The trial court dismissed plaintiff's petition for separate maintenance. After careful study of the evidence of plaintiff and her witnesses we agree with the ruling of the court. The testimony of plaintiff was contradictory within its content. Plaintiff submitted the testimony of thirteen witnesses on her behalf. There was very little corroboration in the evidence. The principal and teacher from the school attended by Pidgeon testified she was a normal little girl, doing good work in school, and was always neat and clean. The minister of the church where the children attended Sunday school testified that he thought plaintiff was more instrumental in connection with the children attending Sunday school than defendant. One friend of plaintiff testified in her opinion plaintiff was a good mother. A man from Remsen who was a neighbor of the Jacksons testified Mrs. Jackson complained to him that Mr. Jackson did not leave her any money. However, he also testified that she had a charge account at a grocery store which his brother owned and that Mr. Jackson paid the bills. He was neutral in his testimony, it being evident he did not desire to say anything against either party. Another friend of Mrs. Jackson testified, but her testimony consisted principally of statements made to her by Mrs. Jackson. There were four witnesses who had at various times worked at the night club for Mr. Jackson. There had apparently been some difficulty as between them and Mr. Jackson because they were rather bitter toward him and the testimony consisted principally of complaints against Mr. Jackson concerning matters between him and the witnesses. They did testify about some derogatory statements made by defendant against plaintiff. In the second hearing she produced two detectives whom she had hired and who testified they had spent considerable time in defendant's night club, and whiskey by the drink was being served regularly; beer was sold to a minor, and there was continuous gambling in the form of throwing dice with merchandise as a prize. Plaintiff's principal complaint against defendant was use of harsh, abusive and derogatory language toward her. There is no testimony in the record concerning any serious physical abuse. Plaintiff testified as to two incidents only: at one time when she had a quarrel with defendant concerning an old gentleman who was

working at Waeside, defendant put his arm around her neck and twisted her arm some as he was leading her out through the door; at another time when she struck their two-year-old girl and knocked her against the wall, he kicked her out of bed and she scratched her knees on the floor. This is the substance of the evidence by and on behalf of plaintiff. As in all divorce or separate-maintenance cases, the facts in this case are different, and each case must be decided on the basis of the facts contained therein.

 In all divorce cases we give substantial weight to the findings of fact of the trial court. Keller v. Keller, 239 Iowa 687, 31 N.W.2d 343; Levis v. Levis, 243 Iowa 574, 52 N.W.2d 509; Massie v. Massie, 202 Iowa 1311, 210 N.W. 431; Perry v. Perry, 199 Iowa 685, 202 N.W. 572. Because of the drastic contradiction in the evidence as between plaintiff and defendant this general rule is of especial importance in this case. The trial court had the advantage of close observation of both parties as their testimony was being given. As a result of the long experience of the trial court in this case his analysis of the evidence of the parties at the close of the first hearing is entitled to substantial weight.

 III. The trial court granted a divorce to defendant on the ground of inhuman treatment. The case is very close, and careful consideration of the complete record is necessary in order to sustain the trial court as to this decision. We have held in several cases that it is important to give consideration to the complete record. Meyer v. Meyer, 169 Iowa 204, 151 N.W. 74; Murray v. Murray, 244 Iowa 548, 57 N.W.2d 234; Kentzelman v. Kentzelman, 245 Iowa 579, 63 N.W.2d 194. Defendant offered the testimony of twelve witnesses on his behalf. The testimony shows two instances of physical violence by plaintiff against defendant and one instance of a threat. The physical violence testimony is corroborated by other witnesses. The threat appears only in the testimony of defendant, but was not denied by plaintiff on rebuttal.

Defendant testified: "About a year ago my wife threatened me with a revolver. Q. And what did she say at that time? A. She said, 'If you touch me I'll shoot you'. I had not made any effort to hurt or bother her in any way." At one time plaintiff

bit defendant on the arm so that it raised a large black and blue spot immediately above the pit of the elbow of the left arm. This occurrence took place at Waeside and was corroborated by a witness. It was the incident we referred to in connection with plaintiff's testimony, where plaintiff had been verbally abusing the cook at Waeside and defendant put his arm around her neck to lead her out of the building. At another time she took a cup of hot coffee and threw it on defendant in a fit of anger. This was corroborated by one of defendant's witnesses and was not denied by plaintiff on rebuttal. The witness said: "I seen her throw a cup of hot coffee in his face. It just came off the stove."

The most serious evidence with reference to inhuman treatment however consisted of the frequent profanity used by plaintiff toward defendant and the children, and in the presence of the children, and the continuous angry criticism, nagging and apparently untrue charges as to defendant's visitations to Sioux City. Defendant's mother lived in Sioux City and his testimony was that when he went there it was for the purpose of helping and assisting his mother in connection with a rooming house she was maintaining as a matter of earning her living. Defendant testified concerning the effect on his health in that he had become extremely nervous and that his eyes had become affected from lack of rest and sleep. He testified the cause of lack of sleep was "the constant yelling and nagging at the children and at me (by plaintiff)." He also testified: "Mr. Jackson, do you or do you not have any fear for your life and the lives of your children, if you continue in this marital relationship? A. Yes, I have. Q. Do you have a fear within you that at sometime or other Mrs. Jackson will do you or some of the children great physical harm? A. Yes."

Two of defendant's witnesses were close neighbors. They testified as to plaintiff's frequent use of profanity. Mr. R. A. Anderson, a next door neighbor, stated: "I have heard her using profanity toward them. It's hard to tell as to how many occasions because I hear it day and night * * * About two thirds of the time there is an angry or belligerent tone to it. I have seen Mrs. Jackson when she was mistreating the children * * * I seen the little girl come out of the house—and the little girl was crying; and I seen blood coming down her face as though she

had slapped her in the mouth." Mrs. Anderson supported her husband in this testimony. Another neighbor also testified somewhat to the same effect. Three of defendant's witnesses were employees and they supported the testimony of Mr. Jackson and the neighbors with reference to constant use of profanity and of harsh and abusive language by plaintiff toward defendant. Another witness was a man who serviced candy or gum machines at Waeside. He called about once a week and supported defendant in his contention concerning plaintiff's general attitude of abuse. One witness was from Sioux City and he supported the contention of defendant that when he came to Sioux City he was working and helping at his mother's house. Defendant's mother was a witness supporting this contention. On the basis of the whole record we sustain the ruling of the trial court.

IV. The matter of custody of the two little girls, now eleven and six, is a serious question. The two parties have lost all love for each other and any hope for happiness has disappeared. The welfare of the two little girls is now the matter of primary importance. Freese v. Freese, 237 Iowa 451, 458, 22 N.W.2d 242; York v. York, 246 Iowa 132, 136, 67 N.W.2d 28. The trial court had a difficult decision to make, and in this trial de novo we are now confronted with the question. On one side is the mother with her habit of frequent profanity in the presence of and toward the children, and with her fits of anger and continuous nagging and scolding and, as the neighbors say, "shrieking" toward the children. She was abusive and cruel in her discipline. The court takes judicial notice of the fact that discipline is necessary at times, but when applied physically should be in the right spot. However, a neighbor testified plaintiff struck Pidgeon in the face and caused bleeding, and defendant testified that at one time when Punkin was two years old, and was innocently playing with her father and mother, plaintiff became angry and "backhanded" her, throwing her violently against the wall. On the other hand, defendant is the owner and operator of a night club in which liquor by the drink, serving beer to a minor, and gambling by throwing dice for prizes, apparently is a regular occurrence. This evidence is uncontradicted. However, the testimony shows defendant to be kindly toward, and considerate of, his two little girls. The trial court granted custody

to defendant. In balancing the scales on the question of custody as between the two parties, we are of the opinion they tip slightly in favor of defendant. The fact that we are approving custody in defendant is evidence of our confidence that the little girls will receive proper and kindly care, and will be sent to school and Sunday school regularly. We find a peculiar and unusual situation present, which we cannot ignore. As a condition of custody defendant must cease violation of the liquor and gambling laws of our State in his night club. Such actions are contrary to proper rearing of girls of tender years, who will soon be in their teens and then young ladies. We instruct the trial court to hold a hearing in approximately ninety days, to determine whether or not defendant has ceased such law violation at Waeside. We are not by these instructions presuming to control the business activities of defendant, but we have the responsibility of the welfare of these two apparently very intelligent little girls. Defendant will have to make the choice as to whether he wants permanent custody of his girls, or wants to continue law violation. We cannot tolerate both. If at such hearing the trial court finds continuation of law violation, it will enter such order concerning custody as will be for the welfare of the children. This does not mean returning them to plaintiff. Compliance by defendant with these conditions establishes the status quo, as a basis for any material change of conditions if such should arise in the future.

In connection with custody by defendant we will also consider the question of right of visitation by plaintiff. As the matter stands at this time the trial court has canceled this right. When the first decree was entered in November 1954 the trial court granted right of visitation to plaintiff. We do not approve of the later procedure of the trial court. In April 1955 the court made an unannounced visit at the home of defendant and apparently had a conference with the two little girls. After this conference, he wrote the following letter to the attorneys in the case:

"Le Mars, Iowa, April 14, 1955

"Spencer M. Day
512 Toy Nat'l. Bank Bldg.
Sioux City, Iowa

 1375

Morse Hoorneman In re:' Equity No. 19284
Attorney at Law Jackson vs. Jackson
Le Mars, Iowa Plymouth County

Wm. A. Shuminsky
609 Security Bldg.
Sioux City, Iowa

"Gentlemen:

"I recently made an unannounced call at the home of Mr. Archie
Jackson and had a visit with the two children of the above named parties.
The children appeared to be very well cared for and very happy in their
home. They impressed me as being very intelligent. The older child,
Pidgeon, who is 9 years of age, narrated some circumstances which have
very evidently made the regular visits with her mother very distasteful
to her. The insistence of her father that she make such visits, while com-
plied with by her, have undoubtedly been much against her will, and she,
asked that she be not required to make such visits. I told her that in
view of her attitude I did not think it would be proper for the Court to
insist that she make such visits.

 "Yours truly,

 /s/ R. G. Rodman
 ─────────────────────
 Judge, District Court of
 Iowa, Twenty-first Judicial
 District."

 It is true that on some occasions in connection with a
divorce action the trial court interviews the children of the
parties in chambers. However, while the interview may be a
private one between the Judge and the children, it occurs during
the progress of the case and all parties and attorneys are cog-
nizant of the matter and are at least present in the courtroom.
There are two matters in connection with the trial court's visit
concerning which we have serious doubts: the children were of
tender age, nine and four, and a grave question arises as to the
advisability of completely canceling the mother's visitation rights
because of what such immature children may have said. In the
second place the rights were canceled by letter without granting
to plaintiff's attorneys any opportunity to present evidence or
argument. At the final hearing in May additional evidence was
offered by both parties. After this hearing and in the supple-
mental decree the trial court still canceled any and all rights of

visitation in favor of plaintiff. We are modifying the decree, to the extent of restoring plaintiff's right of visitation. We instruct that plaintiff be granted visitation rights with the two daughters of the parties at least once a month. The time, place and circumstances shall be fixed by the trial court after conference with the attorneys for both parties or as a result of testimony if the court desires to hear further testimony on the question of time, place and circumstances only. Plaintiff's treatment of her children at visitation time must be proper, kindly and considerate.

V. Appellee alleges that since plaintiff accepted and collected the alimony fixed by the trial court she has acquiesced in the decree and is not entitled to appeal from any of its terms. In the preliminary decree in November 1954 the court granted plaintiff $200 per month and according to the record she collected this for a period of seven months, or a total of $1400. In the final decree the court granted her $1800 which defendant paid and which plaintiff collected according to certificate of Clerk of the District Court on file herein. The circumstances of this case are somewhat different from the facts as presented by other cases bearing on this subject. We concur in the position that since plaintiff accepted substantial benefits under the decree in the form of $3200 alimony, the question of alimony has been settled. She is not entitled to raise in this appeal any question concerning alimony. Larson v. Vinje (Iowa, not reported), 109 N.W. 786; 2 Am. Jur., Appeal and Error, section 219, page 981; Leigh v. Leigh, 247 Iowa 358, 73 N.W.2d 727. We have elected to consider the case de novo as to the divorce. The District Court is always open to hear and determine custodial questions, if welfare of children involved demands such consideration. As a consequence of this situation plaintiff was not estopped from appealing, and securing our consideration, on the question of custody of the children.

VI. Plaintiff's attorneys filed motion for allowance of expense money in connection with this appeal in the amount of $593 which was the cost of transcript, printing, etc. The motion also contained an application for allowance of $1800 attorney fees in connection with this appeal. Under order of this court the motion was to be submitted with the case. The nature of the case and the questions involved were such that plaintiff was

entitled to appeal her case to this court. She was the wife, and from the record it would appear she had little or no independent means. Her attorneys have already been allowed by the trial court the amount of $750 fees for District Court services. We hold that defendant pay to plaintiff the .$593 expense items and an additional $750 fees for plaintiff's attorneys in connection with this appeal. The above expense allowance covers costs advanced by plaintiff. Defendant has paid his printing expense and shall assume this item. Balance of costs to be taxed to plaintiff.

The case is modified as to visitation rights of plaintiff; otherwise affirmed, with instructions.

All JUSTICES concur.