Connie Louise Nichols, appellee, v. Robert Daniel Nichols, appellant.

No. 51440.

(Reported in 133 N.W.2d 77)

February 9, 1965.

Robert Daniel Nichols, appellant, pro se.

Richard C. King, of Council Bluffs, for appellee.

SNELL, J.—This is an action for divorce. Plaintiff at the time of trial below was nineteen years old and on parole after conviction of a felony. She was sixteen years old when married.

Defendant at the time of trial was thirty-four years old and in the penitentiary.

Plaintiff and defendant were married after defendant's conviction of a felony. Their married life together consisted of eight hours spent together in the upstairs of the Monona County jail. Their marriage was ill-advised prompted by plaintiff's suspicion of pregnancy and a mistake, but courts in Iowa do not have authority to dissolve marriages on the grounds that the parties made a mistake.

There has been forwarded to us from defendant a package containing letters received by defendant. There is nothing to show that these letters were offered in evidence in the trial court. They are not properly before us. Our review is de novo but not to the extent of receiving evidence not offered in the trial court. We have examined the exhibits offered in the trial court.

The trial court found that defendant while in the penitentiary wrote numerous letters to plaintiff containing requests and suggestions so far beyond the realm of decency and propriety and so upsetting to plaintiff as to constitute cruel and inhuman treatment. Plaintiff so testified, but it would appear that her infatuation with another man was a contributing cause to her distress. She said she had destroyed the letters. She also testified as to accusations made by defendant. The accusations may have been exaggerated but were not unfounded. She was corroborated by her parole agent.

The trial court granted plaintiff a decree of divorce. No children were born to the parties. Neither property interests nor alimony is involved. We sympathize with the effort of the trial

court to rectify the parties' mistake but our divorce laws are not sufficiently elastic to permit us to affirm. Under the Code of 1851 a divorce could have been granted but our right to exercise judicial discretion in such cases has been repealed.

Plaintiff's case was based on letters she said were written by defendant while in prison. The letters were not produced. If they were of the kind described it is difficult to understand how they passed the prison mail censor. Plaintiff's testimony was of doubtful sufficiency to support a decree under our statutes.

Even if we accept, as did the trial court, that plaintiff's testimony as corroborated established such inhuman treatment as to endanger plaintiff's life, we are faced with the problems of recrimination and condonation.

Plaintiff, in her testimony from the witness stand, admitted accepting the attentions of other men, and admitted adultery since her marriage. As found by the trial court her conduct was "not beyond reproach."

Plaintiff's parole agent described her as immature, naive, "and she liked boys." The inescapable fact, however, is she admits being guilty of a statutory ground for divorce.

I. The doctrine of recrimination is as ancient as the Mosaic Code. It came into the common law through the ecclesiastical courts. In some jurisdictions it has been found unsatisfactory from the social and general welfare premise and as a brake on efforts to correct divorce evils. Under an old statute Iowa once leaned toward the doctrine of comparative rectitude. Our present statutes, however, strictly limit the grounds for divorce and offer relief only to the innocent party.

██ ██ "We are committed to the doctrine of recrimination, that is, if the evidence shows each party to be guilty of an offense which would give the other a right to a divorce, it must be denied to each. 'If both parties have a right to divorce, neither party has.' Hoffman v. Hoffman, 43 Mo. 547, 549. The rule has been criticized, but seems firmly established in Iowa. 28 Iowa Law Review 341–349 inclusive. We do not recognize the principle of 'comparative rectitude', which seems to exist only by statute in a few jurisdictions." Paulsen v. Paulsen, 243 Iowa 51, 57, 58, 50 N.W.2d 567.

Failure to come before the court with clean hands bars relief. Leigh v. Leigh, 247 Iowa 358, 361, 73 N.W.2d 727. Unless plaintiff's conduct has been condoned she cannot prevail.

II. This case was tried in January 1964. Plaintiff testified that in January 1963 she was "going with" and thought she loved another man. She was not going with anyone at the time of trial. She now argues on appeal that her indiscretions have been condoned.

█ Condonation, to be available, must be pleaded. Kentzelman v. Kentzelman, 245 Iowa 579, 583, 63 N.W.2d 194.

The burden of proof on a plea of condonation is on the person asserting it. Leigh v. Leigh, supra, loc. cit. 362.

In the case before us we find no pleading of condonation nor evidence thereof sufficient to support plaintiff's right to a divorce.

█ From the court file certified to us it appears that the parties have individually (not through their counsel) and with litte regard for the integrity of the law, negotiated for a divorce. They have sought intervention by the Board of Control, Board of Parole, Judges and the Governor. The Governor wisely declined to interfere in the parties' private life.

The parties' negotiations for a divorce were beyond the limits of propriety and were far short of good faith toward the trial court. No useful purpose would be served by extended discussion thereof.

If there has been any willingness to condone by defendant as indicated by his contest of his wife's petition the plaintiff has also been willing to forgive and forget.

Trial of this case in district court commenced on January 5, 1964. On January 12, and before the signing of a decree by the court, plaintiff wrote defendant a friendly letter in which she said:

"It was sure nice to get things talked out. I can see now it's alot better talking in person, than thru letters. Letters never seem to do as good, but sometimes they have to!

"I meant just what I told you Bob, if the judge will not grant me a divorce, after you have with-drawn, then I'll give you your chance, and I won't use anything after December 17th,

1962! Bob you can't have anyone appear for you, if you withdraw. Have you informed your lawyer that you have with-drawn yet ?"

The parties have not played fair with the trial court and we cannot place the stamp of judicial approval thereon.

The case is—Reversed.

All JUSTICES concur.