**Sandra J. KADUCE, Appellant,**

**v.**

**Ardell V. KADUCE, Appellee.**

**No. 53926.**

Supreme Court of Iowa.

May 5, 1970.

Rehearing Denied June 22, 1970.

Hobson, Cady & Drew, Hampton, for appellant.

Maurer & Jones, Ames, for appellee.

MOORE, Chief Justice.

On August 31, 1967 plaintiff, Sandra J. Kaduce, filed her petition alleging cruel and inhuman treatment on the part of defendant. She asked for a decree of divorce, custody of the parties' three minor children, child support, alimony and for equitable property division. On trial the court denied her a divorce primarily on a finding and conclusion—"she is not in court with 'clean hands' and the doctrine of 'recrimination' applies." Plaintiff has appealed. We affirm.

Plaintiff asserts the trial court erred in (1) applying the doctrine of recrimination, the same not having been pleaded, (2) finding plaintiff had been guilty of adultery and (3) failing to find defendant had condoned any misconduct of plaintiff.

I. Our review of this equity action is de novo. Rule 334, Rules of Civil Procedure. When considering the credibility of witnesses we give weight to the fact findings of the trial court but are not bound by them. Rule 344(f) 7, R.C.P.

II. The parties were married in Belmond, Iowa, December 1, 1956 where they lived until they separated in August, 1967. A son Steven and two daughters, Kristin and Julie, were born to this marriage. They were age 8, 4 and 3 respectively at trial time, December 11, 1968. Defendant was steadily employed in garages and oil stations. He worked nights helping build a new home for his family. Plaintiff worked some outside the home and at trial time was earning $100 a week as a bookkeeper. They acquired an equity in a house worth approximately $21,500, a general line of household furnishings, a 1964 Mercury automobile and a 1961 Chevrolet station wagon. Contrary to most divorce cases, the parties did not have serious financial problems.

At the time of marriage plaintiff was 16 and defendant 21 years of age. Neither had been previously married. The difficulties in the marriage started almost immediately thereafter and continued until the separation. Details and dates of defendant's mistreatment of plaintiff need not be enumerated. Plaintiff's testimony, which is sufficiently corroborated, proves defendant was belligerent, frequently became intoxicated, many times choked, slugged and beat plaintiff, tore her clothing, broke her glasses, bruised her arms, blackened her eyes and said he was going to kill her. On several occasions he said "You are no good, you are rotten, you are not fit to be a mother". Plaintiff stated defendant made excessive sexual demands, berated her in public and called her various names such a tramp, whore and s. o. b.

Defendant did not deny the assaults made on plaintiff. He claimed she provoked him into committing them.

Defendant's misconduct was such as to give plaintiff grounds for divorce because of cruel and inhuman treatment as to endanger her life under the provisions of Code section 598.8(5) and the well established rules of law which we have set forth in Lawler v. Lawler, Iowa, 175 N.W. 2d 103, 108; Sigler v. Sigler, 260 Iowa 748, 749, 150 N.W.2d 287, 288, 289, and Beno v. Beno, 260 Iowa 442, 445, 149 N.W.2d 778, 780. They need not be repeated here.

III. Defendant testified his wife at times became intoxicated, used abusive language, denied him reasonable access to the marital bed for periods of months, made excessive demands for money, would not prepare proper meals and was a dirty housekeeper. Other witnesses corroborated defendant's testimony.

The marital troubles of the parties became known to Mr. and Mrs. Bob Erdman with whom they had social contacts. Mr. Erdman with defendant's consent agreed to visit plaintiff and attempt to point out where she was wrong. He was a garbage hauler and began a practice of stopping two or three mornings a week at the Kaduce home, while defendant was away working. His stays became longer and resulted in the neighbors talking about his

garbage truck sitting there for an hour or an hour and a half at a time. The neighbors' talk came to the defendant's attention and he asked Mr. Erdman to stop his visits to which Erdman responded "Okay Sam—I'll quit 'er". He however did not do so.

A month or more later a neighbor while riding with defendant said "That garbage man sure spends a lot of time at your house. He goes in there and he's in there an hour or better each time." This aroused defendant and he arranged to be off work the next morning. On that morning, the date of which is not stated in the record, defendant left for work as usual but returned and hid in the basement. About eleven a. m. the garbage truck arrived and Mr. Erdman entered the house. After some time elapsed, defendant tiptoed upstairs and through the kitchen to the living room where he saw plaintiff, clad in her nightgown, lying on the davenport and Erdman on top of her. Defendant called the chief of police and Mrs. Erdman. What happened when she arrived is not shown by the record but apparently there were no such later episodes which came to defendant's attention. The men continued some social contacts thereafter.

Defendant's testimony includes this:

"Q. Now, did you talk to Mrs. Kaduce about this situation? A. Yea. But it did as much good as me talking to this wall —like I was nobody and this was something I'd better swallow or just like it or lump it."

On cross-examination in her case in chief plaintiff admitted her husband had observed her on the davenport with Erdman and they were kissing. She offered no explanation for such conduct.

■ IV. Adultery being peculiarly a crime of darkness and secrecy, it is not necessary in divorce proceedings to prove the direct act. The criminal intercourse may be established by or inferred from circumstances which lead to adultery by fair inference as a necessary consequence. Evidence of adultery is sufficient when the circumstances proven lead naturally and fairly to the conclusion of guilt, and are inconsistent with any theory of innocence. Weatherill v. Weatherill, 238 Iowa 169, 185, 25 N.W.2d 336, 345; Anderson v. Anderson, 197 Iowa 383, 387, 197 N.W. 300, 302; Leupold v. Leupold, 164 Iowa 595, 602, 146 N.W. 55, 58; Carlisle v. Carlisle, 99 Iowa 247, 256, 66 N.W. 681, 684.

■ Applying these legal principles to the evidence here we, like the trial court, find plaintiff had committed adultery. Adultery during marriage is a ground for divorce. Sections 598.8(1) and 598.9, Code, 1966.

■ V. Under the doctrine of recrimination, which we have consistently recognized and applied, where both spouses have cause for divorce, a divorce will not be granted to either. Erickson v. Erickson, Iowa, 154 N.W.2d 106, 111; Nichols v. Nichols, 257 Iowa 458, 460, 133 N.W.2d 77, 79; Arnold v. Arnold, 257 Iowa 429, 433, 133 N.W.2d 53, 56, and citations.

■ Nichols v. Nichols, supra, is much like the case at bar. There plaintiff sought a divorce on the ground of cruel and inhuman treatment. Defendant, as here, answered but did not counterclaim for divorce. The evidence showed Mrs. Nichols had committed adultery. We reversed the trial court and held the doctrine of recrimination barred her from obtaining a divorce. Plaintiff has cited no case holding recrimination is an affirmative defense and must be pleaded.

24 Am.Jur.2d, Divorce and Separation, section 319, page 464, states: "It is held that when, in the course of the hearing, it appears that the plaintiff was guilty of misconduct which, if pleaded and proved by the defendant, would have been a bar to a decree, the court will, in the interest of the state and without regard to the pleadings, refuse to grant the divorce. A divorce may be refused on the ground of recrimination, notwithstanding that it was

not pleaded, where the plaintiff in attempting to make a case shows his own guilt. Where it appears from the proofs properly taken, although the recriminatory charge is not specially relied on as a defense, that the plaintiff has been guilty of adultery and seeks a divorce on the ground of the adultery of the defendant, the court may of its own motion dismiss the suit." Plaintiff's first assigned proposition is untenable.

 VI. Condonation, as the term is used in divorce matters, is defined as forgiveness, express or implied, by one spouse of another for breach of marital duty, with the implied condition the offense will not be repeated. Schantz v. Schantz, Iowa, 163 N.W.2d 398, 403; Fritz v. Fritz, 260 Iowa 409, 414, 148 N.W.2d 392, 395.

Condonation must be pleaded to be available to either party as an affirmative defense. Schantz v. Schantz, supra; Fritz v. Fritz, supra; Nichols v. Nichols, 257 Iowa 458, 461, 133 N.W.2d 77, 79; Hancock v. Hancock, 257 Iowa 119, 122, 131 N.W.2d 757, 759, and citations. The burden of proof of course, is on the party asserting it. Fritz v. Fritz, supra; Leigh v. Leigh, 247 Iowa 358, 362, 73 N.W.2d 727, 730.

Plaintiff did not plead condonation. Assuming arguendo she had there is no evidence thereof. The record discloses she refused to talk about her relationship with Erdman. Plaintiff's third assigned proposition for reversal is without merit.

VII. We are aware of the drastic changes particularly in the fault concept, made in the law for termination of marriage relationship known as House File 1156, Acts of the Sixty-third General Assembly which becomes effective July 1, 1970. It has no application to the problems presented on this appeal.

VIII. Plaintiff's attorneys' application for allowance of attorney fees for services rendered on this appeal was ordered submitted therewith. We find defendant should be required to pay $500 to apply on said fees and they are ordered so taxed against him. The costs of this appeal are taxed against plaintiff.

We agree with the judgment and decree of the trial court.

Affirmed.

All Justices concur except, UHLENHOPP, J., who takes no part.