## HARNETT v. HARNETT.

1. **Divorce**: INHUMAN TREATMENT: EVIDENCE CONSIDERED. Evidence considered and held to show inhuman treatment of a wife by her husband, such as entitled her to a divorce.

2. ———: CONDONATION. Where after a wife had ceased to live with her husband, and had commenced an action for a divorce, the husband, at an interview appointed to negotiate for a settlement, locked the room, and against her will, and by the exercise of some force, had sexual intercourse with the wife, it was held that such fact did not constitute a condonation by cohabitation which would defeat her action.

### *Appeal from Monroe District Court.*

### WEDNESDAY, DECEMBER 8.

ACTION for divorce upon the ground of inhuman treatment. Decree for plaintiff. The defendant appeals.

*H. L. Dashiell* and *John F. Lacey*, for appellant.

*Perry & Townsend*, for appellee.

ADAMS, CH. J.—The defendant is a farmer and has resided with his family for many years in Monroe county. His farm consists of one hundred acres, forty acres of which are incumbered by a mortgage for $600. He has ten children, eight of whom are usually at home. One of the children living at home is a son nineteen years of age, and another is a son fourteen years of age. The inhuman treatment· of which plaintiff complains is alleged to consist in violence inflicted upon her person, and a failure, through idleness, to provide suitable food and clothing.

In proof of the violence, evidence was introduced tending to show that upon one occasion he became angry at the plaintiff, threw her against a wheel, choked her and struck her in the mouth till the blood ran out. Evidence was also introduced tending to show that the defendant was accustomed to

use toward the plaintiff and other members of the family profane and threatening language, and to manifest toward them a vicious disposition.

In proof of the defendant's failure, through idleness, to provide suitable food and clothing, evidence was introduced tending to show that he was absent from home without excuse from one-half to two-thirds of the time, and that he did but very little work.   One witness who lived fourteen years about a half of a mile distant and was often at defendant's' house, testifies that he never saw him at work.   Evidence was introduced tending to show that the family was in great destitution; that the house was cold and insufficient to afford a reasonable shelter, and that the family suffered for want of food and clothing, and especially for want of bed-clothing.

The defendant introduced some evidence tending to rebut the evidence introduced by plaintiff, and especially tending to show that he was infirm, and not able to do much work.

It would serve no useful purpose to set out the evidence in detail.   It is sufficient to say that it satisfies us that the allegations of the plaintiff's petition were proven, both as to violence to her person and the destitution caused by the defendant's negligence.   It is true the evidence does not show many acts of violence towards the plaintiff.

One witness, after testifying to the act which we have already set out, says that the next morning the defendant struck the plaintiff twice.   This occurred two or three years prior to the commencement of this action.   If, aside from these acts, the defendant had manifested a proper disposition toward the plaintiff, we should be inclined to think that the acts were not such as to entitle the plaintiff to relief.   Perhaps, indeed, we might come to the conclusion that the action could not be maintained, notwithstanding his proven vicious disposition, if he had not failed so signally to furnish suitable food and clothing.   But the destitution shown is of a painful character.   In our opinion such destitution must tend directly to the impairment of health and the shortening of

life, and that the destitution occurred, in part at least, through the defendant's fault. It may be that he was not able to perform much labor, but the evidence does not show that he was wholly incapacitated. On the other hand we are satisfied that if he had remained at home and had worked with, advised and encouraged, his boys as best he was able, his family would have suffered far less than the evidence shows that they did.

One defense remains to be considered, and that is condonation by cohabitation. After the action was instituted, negotiations were commenced between the plaintiff and defendant with a view to a reconciliation and and dismissal of the action. While these negotiations were pending they met at a public house. The proposition to meet there was made by the defendant to the plaintiff, and ostensibly for the purpose of talking further in regard to the dismissal of the action. They met in the sitting-room, or ladies' room. It was between two and three o'clock in the afternoon. What was said in regard to the dismissal of the action does not appear, but after some talk in regard to it he locked the door and asked her to allow him to have sexual intercourse with her. This she declined. He finally succeeded, but as the evidence shows, against the wishes of the plaintiff and not without the use of some force. This is now relied upon by defendant as showing condonation.

2. ——: condonation.

In our opinion, it did not have that effect. The time and place, the unwillingness of plaintiff, the use of force, all tend to satisfy us that the connection was brought about solely by the efforts of the defendant, and with the view, probably, of taking advantage of it to defeat the action. The connection upon her part lacked an essential element. It was not voluntary in any proper sense. Probably there was not absolute physical compulsion. But she had been locked in the room of a public house, and had become subject in some measure to his control. She says in her testimony: "He was so much determined I could not get away from him."

The law is lenient toward the wife in respect to condonation by cohabitation. In *Wood v. Wood*, 2 Paige, 108, the court said: "Condonation, by implication from the fact of cohabitation, ought not to be held a strict bar against the wife. She is, in a measure, under the control of her husband, and this distinction will be found running through all the English cases on the subject."

It is true, that in the case at bar the alleged act of condonation took place after the action had been commenced. But this fact is not material except as tending to show that she had emancipated herself from his control, not alone by separation, but by throwing off her marital allegiance. But where the husband, as in this case, regains possession of his. wife's person by decoying her into a locked room, and by sheer persistence, mingled with more or less of force, accomplishes sexual connection against her wishes, the law, we think, will not allow him to take advantage of such fact.

By the decree the plaintiff was given twenty-eight acres of the land, a portion of the personal property, and the defendant was decreed to pay her one hundred dollars per year to assist her in supporting the four younger children until the further order of the court. The defendant claims that the alimony is unreasonable.

We have had some doubt whether the annual allowance is not more than the defendant can pay. But in view of the fact that the burden of supporting the younger children is taken from him and cast upon the plaintiff, we have concluded that the decree must be allowed to stand.

AFFIRMED.