Helen Louise Joneson, appellant, v. George Alan Joneson, appellee.

No. 49238.

(Reported in 86 N.W.2d 877)

December 17, 1957.

344

Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellant.

Cook & Drake, of Glenwood, for appellee.

OLIVER, J.—This is an appeal by plaintiff-wife from a judgment dismissing her suit for divorce, based upon inhuman treatment. Plaintiff and defendant were married October 14, 1955. Both were in their early forties and each had previous experience with marriage and divorce, plaintiff with one spouse and defendant with two. Plaintiff owned and operated a gift and costume jewelry shop in Council Bluffs. Her daughter, Judith, age seventeen, lived with her there and did some work as a nurse's aid.

Defendant, by occupation a sign painter, assisted in the liquidation of plaintiff's business by painting signs and banners. About November 1 the parties and Judith moved into a house in Mills County, owned by defendant. The house was a remodeled country schoolhouse, located thirteen miles from Glenwood and, apparently, near the town of Malvern. Its value was estimated at $4500. Defendant procured furniture and equipment for it, largely on credit.

In addition to painting signs, defendant was then working as a life insurance salesman. In the late fall of 1955 he was stricken with an ailment subsequently found to be diabetes. He was in a hospital from January 13 to 20, 1956, for tests and treatment. At the trial in 1957, a doctor classified his diabetes as, "one of the extreme cases", and very dangerous, and expressed the opinion he would not be able to work at sign painting as many hours as one without diabetes.

Upon leaving the hospital in January 1956 defendant rented an apartment in Council Bluffs for a month. During that month he spent several days at home. Later he stayed at the Council Bluffs Y.M.C.A. No reason is given for his not staying at home. Plaintiff testified she did not understand what was going on or what was happening to her. Defendant's father and other relatives brought food to the home and Judith's father sent $25 per

month for her support. In addition, defendant had sent plaintiff a postal money order for $210 and a check for $12 between January and April 23, 1956. On that date he drove away in his truck to a destination unknown to plaintiff. A witness testified he had previously said he was going to California, did not know or care what happened to plaintiff, and that his father would "take care of" the house.

Plaintiff was not at home when defendant departed. She testified he took his paints, equipment, clothing and personal articles and also a waffle iron, leather folding chair, Polaroid camera, electric sweeper, bathroom scales, clock radio, set of knives, typewriter table, two thermos jugs, forty combs of honey, two mattresses, bedding and towels. Upon his instructions an automobile dealer repossessed an automobile he was buying on contract.

Thereafter creditors repossessed the wringer-washer, gas rangette, refrigerator and a bedroom set used in the home. Plaintiff testified: she borrowed an oil burner stove and used an old refrigerator which did not work well; until September 1956 her only income was from the occasional sale of articles remaining from her gift shop; relatives supplied her with some food and assistance and she secured some food from the Mills County Relief Agency but was unable to get fuel oil there; she worked for the Council Bluffs Police Department the last four months of 1956; Judith and she were at times without fuel in cold weather and stayed with friends and relatives.

Shortly after defendant went away his father started a suit to foreclose a mortgage made by defendant on the home. Defendant co-operated with his father and against plaintiff by accepting service of notice, making written appearance and consenting to judgment foreclosing the mortgage. Mrs. Joneson pleaded the mortgage was invalid because she had not joined in its execution. Thereafter the suit was dismissed. Later, execution was levied on the home on a judgment given by defendant to his father by confession. It is a fair inference defendant confessed the judgment with the intention it would result in depriving plaintiff of the homestead. At that time defendant was living with his father in Arkansas. May 1, 1956, plaintiff had sworn to a preliminary in-

formation, charging defendant with the crime of desertion as defined in section 731.1, Code of Iowa, 1954. His location was then unknown to others than his father.

In July 1956 defendant wrote plaintiff a caustic and abusive letter. Thereafter a demand for his extradition was made to the Governor of Arkansas. This was resisted by defendant who then was living with his father at a motel rented by the latter in Mountain View, Arkansas, where defendant had a sign shop. Defendant's father advanced about $450 in connection with his resistance. Defendant had started a divorce suit in Arkansas on the ground of indignities toward him, etc. His extradition was refused with the understanding he would dismiss that suit, and would appear in the divorce suit started by plaintiff in Iowa.

There was evidence defendant's treatment of plaintiff made her ill, she was under a constant nervous tension, was unable to eat or retain food, was unable to sleep, suffered from deprivation and exposure and required medical attention.

Upon his appearance in the Iowa suit the court ordered that defendant pay $75 temporary attorney fees and $25 per month toward plaintiff's support. Defendant made three $25 payments. He did not pay the $75 temporary suit money. Thereafter the divorce suit was tried and, on March 19, 1957, the court rendered judgment denying plaintiff a divorce. She has appealed.

I.   The trial court found in part:

"Most of the evidence on the part of the plaintiff was not contradicted by the defendant through any testimony. It appears that the defendant might have been guilty of desertion in the month of April, 1956, when he left the home of the parties. * * * That the plaintiff was destitute is amply sustained by the evidence that she had to depend on friends and relatives and the Welfare Department of Mills County, for aid and succor. * * * The desertion and the destitute condition of the plaintiff is not necessarily cruel and inhuman treatment such as to endanger life."

Although the record clearly shows defendant deserted plaintiff and does not show any cause for such desertion, plaintiff does not seek and would not be entitled to a divorce on the ground of desertion, for the reason it has not continued for the

statutory space of two years. Nor is nonsupport a ground for divorce in Iowa. Parker v. Parker, 244 Iowa 159, 164, 55 N.W.2d 183, 186.

However, there is more here than merely desertion and nonsupport. Defendant must have realized his stripping much of the furnishings from the home and departing without notice would result in his creditors seizing most of the remaining furniture and equipment, leaving insufficient equipment for plaintiff's comfortable living. His statement, relative to his proposed departure to an unknown destination, that he did not know or care what happened to plaintiff is some indication of a realization that she would suffer deprivation. This is indicated also in the letter he wrote her.

Moreover, he was a party to attempts to force plaintiff from the home. It appears these acts of the father were influenced by the situation of the son. The relations between the father and son, at the time, make litigation between them over financial matters seem unreasonable. The father testified: "I let him have money right along. He is my son. If he needs money I let him have it." Under all the circumstances the inference is warranted the primary purpose of these proceedings was the harassment of and injury to plaintiff and that defendant was responsible for them.

Moreover, those are not the only legal assaults with which plaintiff has been troubled. August 9, 1956, defendant instituted in Arkansas a suit for divorce from her, alleging it was impossible for him to live with her because she was guilty of such indignities against him as to make his life intolerable, etc. As already stated this suit was subsequently dismissed by Mr. Joneson. Thereafter he filed answer in the instant divorce suit. That answer merely admitted the formal allegations and denied generally the other allegations of plaintiff's petition. Defendant did not allege he was entitled to a divorce. At the trial he and others who testified in his behalf offered no evidence plaintiff was guilty of any acts or conduct which would entitle him to a divorce. Nor did he offer any evidence denying or excusing the conduct on his part of which plaintiff complained.

Notwithstanding this, we were advised by counsel in oral argument and it was not denied, that after the trial of the case

at bar defendant instituted in Arkansas another suit against plaintiff for divorce. If he then had, or believed he had, valid grounds for divorce, which he intended to present, good faith and Rule of Civil Procedure 29 required that he present them in the trial in Mills County, Iowa, and not continue to harass plaintiff.

Divorces for inhuman treatment have not been limited to cases involving physical violence. Harnett v. Harnett, 55 Iowa 45, 46, 7 N.W. 394, 395, involved some actual violence and failure to provide suitable food and clothing, through idleness. The decision states:

"If, aside from these acts, the defendant had manifested a proper disposition toward the plaintiff, we should be inclined to think that the acts were not such as to entitle the plaintiff to relief. Perhaps, indeed, we might come to the conclusion that the action could not be maintained * * *, if he had not failed so signally to furnish suitable food and clothing."

In Low v. Low, 232 Iowa 1114, 1116, 1117, 7 N.W.2d 367, 368, there was no physical violence but there was testimony as to the failure of the husband to contribute to the care and support of his family and its resulting financial straits. In reversing the judgment and granting the wife a divorce the court stated:

"The resulting struggle on her part for maintenance for herself and children and their education, with no assistance from her husband, together with his conduct, habits, coarse disposition and mind, lack of bodily neatness, and disregard for her feelings or the security of his family, could all well have contributed, and the testimony shows did so contribute, to her physical and nervous condition."

Hylarides v. Hylarides, 247 Iowa 841, 847, 848, 76 N.W.2d 779, 782, was another reversal. Authorities were cited in support of the statement, "That there may be such cruel and inhuman treatment as to endanger life even without any physical violence is thoroughly established." The decision quotes with approval from the Harnett case and points out that in Low v. Low, supra, "we reversed the trial court and granted plaintiff-wife a divorce notwithstanding a total want of any physical violence, but upon a showing of cruel treatment of another sort including failure to furnish maintenance, and of coarse and careless conduct causing a nervous condition and breakdown."

Of course, the question is one of fact, depending upon the circumstances shown in each case. We have examined with care the record in the case at bar and have reached the conclusion plaintiff should have been granted a divorce on the ground of inhuman treatment.

II.    Plaintiff's petition prays that she be given the homestead and judgment for alimony, attorney fees and costs. In argument her counsel suggest a lump sum alimony award which would be a lien upon the homestead. Except as to the allowance to plaintiff of attorney fees upon appeal, which we fix at a total of $300, we feel the trial court is in the better position to determine these matters.

The judgment is reversed and the cause remanded for judgment awarding plaintiff a divorce, alimony, attorney fees, costs, etc., in the trial court, in such form and amounts as the trial court may determine is proper.—Reversed and remanded.

HAYS, C. J., and BLISS, WENNERSTRUM, GARFIELD, LARSON, and THOMPSON, JJ., concur.

PETERSON, J., takes no part.