## Jos. J. KUPKA v. ANNIE KUPKA, Appellant.

**Divorce:** DESERTION: INTENT. To authorize a divorce on the ground of desertion there must not only be a separation but a wrongful intent to sever all of the marital relations. Evidence reviewed and held insufficient to show wilful desertion.

*Appeal from Johnson District Court.*— HON. O. A. BYINGTON, Judge.

TUESDAY, NOVEMBER 13, 1906.

DECREE of divorce was granted as prayed. The defendant appealed. *Reversed.*

*Ranck & Bradley,* for appellant.

*Remley & Ney,* for appellee.

LADD, J.— This is a suit for divorce on the ground of desertion, and was begun July 30, 1904. The defendant denied that she had left her husband and, by way of cross-petition, alleged that he had been guilty of cruel and inhuman treatment, and on this ground prayed for the dissolution of the marital relations. To this cross-petition

plaintiff pleaded in bar a former adjudication wherein relief sought on the same ground was denied defendant in a decree entered April 14, 1903. No evidence was adduced in support of the cross-petition, and that, bearing on the issues raised by the petition and answer, was insufficient to establish the charge of desertion. To warrant a decree of divorce on this ground the defendant must have willfully deserted her husband, and absented herself without reasonable cause for the space of two years. Section 3174, Code. Analyzing this it will be found that, as said by Mr. Nelson in his work on Divorce and Separation, section 51, "four elements are essential to a divorce because of desertion: (1) The cessation of the marriage relation. (2) The intent to desert. (3) The continuance of the desertion during the statutory period, and (4) the absence of consent or misconduct of the deserted party." See *Rose v. Rose,* 50 Mich. 92 (14 N. W. 711). Separation is not necessarily desertion. The latter may occur long after the former has taken place, and even when both occur at the same time the guilty party is not always the one who leaves the matrimonial home. *Doolittle v. Doolittle,* 78 Iowa, 691; *Warner v. Warner,* 54 Mich. 492 (20 N. W. 557.)

To constitute desertion there must be not only a separation, but an intent to cease to live together as husband and wife, an abnegation of all the duties of the marriage relation. While this must be wrongful; that is, in disregard of the marital obligations, it is not essential that it be with any purpose of working an injury. Thus, in *Benkert v. Benkert,* 32 Cal. 467, the court in defining " willful desertion," said that it " ordinarily signifies intentional, and that, we think, is its signification here. It does not imply any malice or wrong towards the other party. The word does not seem to have limited the meaning of the term ' desertion ' as construed in the cases and employed by text-writers. The cessation of the matrimonial cohabitation is never treated as desertion, unless it is both intentional and wrong-

ful. There may be malicious intent in the desertion, but its presence is accidental. It does not form a necessary ingredient." In *Ogilvie v. Ogilvie*, 37 Or. 171 (61 Pac. 627) the court, in constructing a like statute, said: "An intentional desertion is a willful, within the meaning of the term as defined by statute. The term does not carry with it the element of malice, or a purpose of doing injury. The act is willful when there is a design to forsake the other spouse wrongfully or without cause; and thereby break up the marital union. Before plaintiff can prevail, he must therefore show that the defendant willfully; that is, intentionally and wrongfully or without cause deserted him, and continued in such desertion for the space of one year." The mere separation of the parties for a temporary purpose, as to enable the one to obtain medical treatment or the other to earn support for the family, as the intent permanently to sever the relations as husband and wife is lacking does not constitute desertion. "The separation must be with the purpose of breaking up the marital union," as said in the last case cited; or, as declared in *Williams v. Williams*, 130 N. Y. 193 (29 N. E. 98, 27 Am. St. 517, 14 L. R. A. 220), "with intention of not returning." In *Johnson v. Johnson*, 22 Colo. 20 (43 Pac. 130, 55 Am. St. 112), the court says: "Desertion consists in the actual ceasing of cohabitation and the intent in the mind of the offending party to desert the other," and in *Fritz v. Fritz*, 138 Ill. 436 (14 L. R. A. 685, 28 N. E. 1058, 32 Am. St. Rep. 156), it was decided to be "the abnegation of all the duties of the marital relation, and not one only." There is no claim in the case at bar that the defendant had cause for leaving the plaintiff. On the contrary, she contends (1) that she did not desert him, and (2) that even if she did, the statutory period of two years had not elapsed prior to the beginning of this action. Bearing in mind that, to make out a case, it should appear not only that she left him, but that this was done with the purpose of terminating their relations

as husband and wife, of not returning, or that such intention was subsequently formed. Let us examine the evidence.

The parties were married March 9, 1901, and on December 7th of the same year to them a child was born. Thereafter she was in poor health. Several physicians were consulted without beneficial results, and she concluded to seek medical aid at Iowa City. He conveyed her with a sister to the railroad station, some seven miles distant, but insists that he was not advised of the purpose of her departure save that it was to visit her parents, while both women testify that the matter was discussed. As nothing occurred to suggest the thought that she was leaving him, the dispute is immaterial. If she took all her clothes they were no more than necessary. If she merely went to her parents' home for a visit, promising to return in a couple of days, she rightly consulted a competent physician who ascertained that her uterus had been lacerated in confinement and, upon his advice, rightly remained for treatment and an operation. If the plaintiff objected to this, save the expense incurred, the record does not disclose the fact. He visited her both before and after the operation which occurred July 3d and, throughout this period, she wrote frequently and affectionately. She remained at the hospital over three weeks, when he took her to the home of her parents, about a half mile distant, though the inference to be drawn from the record is that he had expected that she would then return home with him, a distance of twenty-three miles. The sufficiency of her explanation that she did not feel able to ride so far, and that the physician had advised her that she should not indulge in sexual intercourse prior to January 1st following necessarily depends somewhat on her condition at the time and the nature of her husband, certainly cannot be regarded as so unreasonable as to indicate bad faith. Indeed, she then promised him that she would return, and the record is void of any circumstances indicating an intention not to do so, aside from the mere remaining at .

her parents until she instituted divorce proceedings in December. The plaintiff admits that she repeatedly promised to return to his home, but complains that she never did so. On the other hand, defendant testified that, when she offered to return, he declared that he did not want her, and this is corroborated by the testimony of her sister that, in response to defendant's proposition to go home with him, he declined, saying: "I don't care for Annie any more," and also by the fact that on October 1st, he caused to be sold at public auction all their household goods and other property for which more than $1,400 was received. During all the time of her absence, he had given her only a few dollars. Moreover, he does not claim ever to have requested her to return. In view of all the circumstances we are inclined to hold that the evidence showed that the defendant's departure from her home was justifiable, and that, subsequent to going to her parents from the hospital, she remained away, owing to the indifference of the plaintiff. Certainly the record fails to show any intention on her part to sever the relation that existed between them prior to the time she began suit for divorce in December, 1902. Whether her claim that she was led into this by reason of the sale of their household goods by her husband and the solicitation of an attorney need not be determined, nor need we decide whether this established an intention to desert. Such intention did not exist prior to September 30, 1902, at least and for this reason the statutory period had not elapsed when this action was begun. There is no good reason why these parties should not adjust their differences which are not serious, and fulfill the marital obligations they have assumed. We are of the opinion that the petition should have been dismissed.

*Reversed.*