BESS D. PARKER, appellee, v. CHARLES S. PARKER, appellant.

No. 48130.

(Reported in 55 N.W.2d 183)

OCTOBER 14, 1952.
REHEARING DENIED DECEMBER 19, 1952.

Newport, Bybee & Wine, of Davenport, for appellant.

Thoma & Thoma, of Fairfield, for appellee.

THOMPSON, J.—Plaintiff and defendant were married on August 25, 1927. One child, a daughter, Kathleen, was born to them in 1929. The petition, filed on September 15, 1950, prayed for a divorce upon the grounds of cruel and inhuman treatment such as to endanger plaintiff's life and health, and of desertion for a period of more than two years. At the time of the trial in the district court of Jefferson County, which was begun on August 27, 1951, plaintiff was sixty-one years of age and defendant sixty-three. Further facts material to a determination of this appeal will be set out in Division II hereof.

I. The trial court found for plaintiff upon both grounds alleged in her petition. We do not agree that the evidence adduced shows her entitled to a divorce upon the first ground pleaded, that is, cruelty which endangered her life and health. There was an almost complete failure of defendant to support his family, and it is likely some of his actions and personal habits were annoying to plaintiff. But the record falls substantially short of a showing that his cruelty, if such there was, endangered plaintiff's life or health. The volume of judicial opinions is already causing considerable concern because of the effort and expense occasioned to the legal profession and to litigants in keeping abreast of them; and since we see no benefit in setting out the facts bearing upon the question of cruel and inhuman treatment, and a divorce must be granted upon the ground of desertion, we refrain from going into further detail upon this point.

II. We think plaintiff has proven a case of desertion for the statutory period of two years such as to entitle her to a divorce, and the decree of the trial court must be upheld upon this ground. Under section 598.8, subsection 2, Code of 1950, a divorce may be decreed from the husband "When he willfully deserts his wife and absents himself without a reasonable cause for the space of two years."

At the time of the marriage of the parties defendant held the office of postmaster at Fayette, Iowa. He lost this position

in 1933. He was a veterinary surgeon, but so far as the record shows his only practice in connection with his profession has consisted in the testing of cattle for tubercular reaction. Since the loss of his postmaster appointment he has worked intermittently at testing cattle. Apparently he has had much trouble in holding the various employments he secured in this line of work. The family, for several years following 1933, moved often to various points in Iowa, Wyoming, Nebraska, Louisiana, Puerto Rico, and elsewhere. Much of the time defendant furnished only very meager support for his wife and daughter. For about a year following 1933 plaintiff returned to her former home at Warren, Pennsylvania, and supported herself and the small daughter by working there. In 1938 plaintiff secured a position for herself as manager of a ladies' ready-to-wear store in Fairfield, Iowa, and she and Kathleen have resided there since that time. The defendant was at Fairfield with them for a while. In May 1941 they purchased a home, on which defendant paid $700. He continued to be gone much of the time, holding various cattle testing jobs, and leaving a trail of unpaid bills wherever he went.

In 1944 plaintiff brought an action for divorce based upon the alleged ground of cruel and inhuman treatment. Upon trial this cause was dismissed, the trial court finding insufficient evidence to support her charge. This was in December 1944. Except for the initial payment and the September 1945 installment of $36.15 on the mortgage with which the home was encumbered, defendant has made no contribution to the price of the property. Plaintiff has made all payments on the mortgage, has kept up the repairs and improvements and has paid taxes and insurance.

When plaintiff's petition for divorce was dismissed in 1944 the defendant advised her that "so far as Mr. Parker and I were concerned, the court had upheld him so that was the end—I could take care of myself." This is testified to by plaintiff and is not denied by defendant, except that he says he at no time had any intention of deserting his wife. The old copybook maxim, however, says "actions speak louder than words." We think it is sound, and it is applicable here.

About January 1, 1945, defendant took up his abode, when he was at home at all, in the basement where he slept upon a cot near the furnace. He says this was because he was forbidden

the upper regions by the plaintiff. There is also the question of sexual relations between the parties, which is much discussed in the arguments. It is agreed there have been none since at least some time prior to the bringing of the 1944 divorce action. The defendant testified that this was due to the refusal of the plaintiff; she says that her consent was conditioned upon a requirement defendant clean his person, which she describes as "very dirty." We do not ascribe the importance to this feature of the marital relation given it by the contesting parties in their briefs. There are other matters involved which plainly show the substantial desertion of plaintiff and their daughter by the defendant.

Desertion, to be actionable under our statute, must be willful. This necessarily involves the question of intent. The elements necessary to a divorce on the ground of desertion are these: (1) Intent to desert (2) cessation of the marriage relation (3) continuance of the intent and the cessation for the statutory period, and (4) absence of reasonable cause. Kupka v. Kupka, 132 Iowa 191, 192, 109 N.W. 610. This leading case upon the question of desertion as ground for divorce in Iowa also lays down the rule that "there must be not only a separation, but an intent to cease to live together as husband and wife, an abnegation of all the duties of the marriage relation." Kupka v. Kupka, supra, at page 192. From the same case is quoted with approval, in Tipton v. Tipton, 169 Iowa 182, 185, 151 N.W. 90, 92, Ann. Cas. 1916C 360, the following:

" 'The act is wilful when there is a design to forsake the other spouse wilfully, or without cause, and thereby break up the marital union; deliberate intent to cease living with the other as spouse; abnegation of all duties of the marriage relation, not to return.

" 'Desertion consists in the actual ceasing of cohabitation and the intent in the mind of the offending party to desert the other.' Kupka v. Kupka, 132 Iowa 191, at 193, and cases cited."

We also quoted with approval the first rule above taken from Kupka v. Kupka, supra, in Paulsen v. Paulsen, 243 Iowa 51, 56, 50 N.W.2d 567, 570.

It may be that defendant was willing, even desirous, of having sexual relations with his wife, though he had in all other respects abandoned her. But we are not prepared to say this in itself would free him from the just charge of willful desertion. For that reason, and in view of the facts hereinafter set out from the record, we do not attempt to determine the truth as between the conflicting stories of the parties on the point of who denied marital intercourse to whom.

The statement defendant made immediately after he was successful in defeating the 1944 divorce action has been set out. Without any real contradiction the record shows from that time on he absented himself from the home, and from Fairfield, nearly all of the time. For the first few years he apparently returned to his basement domicile for a day or two, several times each year. But for about three years prior to the bringing of this action he limited his visits to two or three each year and was at such times present for a very few days only. He made no contribution to the support of his wife except he sent her a few boxes of candy. His daughter, after graduating from high school in Fairfield, entered the Iowa State Teachers College at Cedar Falls where she was supported by her mother and by her own labor. Defendant, during the four years Kathleen was in college, gave her only from $50 to $75. It seems apparent he had in fact abandoned his family and left them entirely to their own resources. The plaintiff, during this time, was employed in various occupations and leased part of the home as a means of supplementing her income. She was burdened with payments on the mortgage, with upkeep, taxes and insurance, as well as her aid to Kathleen, which was most substantial, to say nothing of her own living. She carried the load resourcefully and well, without help from the defendant.

But defendant says he was unable to contribute because much of the time he was unemployed. This plea would have much more force if he were not also contending, in effect at least, that his absence from home was due to the nature of his work which kept him in various places away from Fairfield. The two positions are contradictory. If he had work he should have contributed to the support of his family; if he did not, no good reason appears why he could not have been at home. He says

that for about one year—the latter half of 1949 and the first half of 1950—he took care of his brother, at Davenport, for which service he received no compensation except his room and board and the use of a car. Commendable as this might have been under other circumstances, the reflection must inevitably come that his first duty was to his struggling wife and daughter.

In fact, the record does show that defendant had a somewhat substantial gross income in 1946 of $2641.50; in 1948 a net earning of $1858.78; and earnings, whether gross or net is not clear, of about $2000 in 1947; and net earnings of $746 in 1949. Yet he did not see fit to aid his family in any degree whatever, except as above indicated, plus a few groceries furnished by orders on country stores either inaccessible or inadequately supplied.

His conduct for many years was that of almost total neglect of his family; or, as said in Kupka v. Kupka, supra, of total "abnegation of all the duties of the marriage relation." Fortunately the plaintiff was an able, self-reliant woman who assumed what should have been defendant's responsibilities and kept herself and their daughter alive. Nonsupport is not a ground for divorce in Iowa, but it is material to consider it as bearing upon the defendant's intent to desert, because support of the wife is one of the duties of the marriage relation, which the defendant surely abnegated here. Nor is nonsupport the only manner in which his intent appears. Long before the beginning of the two-year period immediately prior to the commencement of this action his attitude was one of indifference to the welfare of his wife and daughter. He left them for considerable periods, upon their own resources, while he wandered about in various places, to them undisclosed except that often they had a general delivery address in some distant town or city through which they might or might not eventually get in touch with him. There is a clear showing, in spite of defendant's statement that his mental attitude contained no such design, that he had in effect willfully deserted his wife for more than the two years required.

It is defendant's contention that because he returned to the home for an occasional day, apparently not amounting to one week out of a year during the latter part of the 1940 decade, a finding of desertion against him is not possible. He

relies largely upon Pfannebecker v. Pfannebecker, 133 Iowa 425, 110 N.W. 618, 119 Am. St. Rep. 608, 12 Ann. Cas. 543. There the husband asked a divorce, charging the defendant wife had "wilfully deserted her husband by declining to have sexual intercourse with him for a period of two years." The real holding of the case is that mere denial of sexual rights is not in itself sufficient to support a charge of desertion. No other facts tending to show desertion were charged or proven. The parties continued at all times to occupy adjoining rooms in the same house, and there is no intimation in the opinion that the husband did not support his wife.

The Pfannebecker case does not hold that a husband who announces his decision that his wife can in the future take care of herself, who thereafter fails entirely to furnish her any support, and absents himself from their domicile except for a few days each year, may not be guilty of desertion. We hold that he has absented himself within the meaning of section 598.8, his brief and most infrequent returns notwithstanding. For all practical purposes, his absence was continuous and the statutory period unbroken. In support of this view see Danforth v. Danforth, 88 Maine 120, 33 A. 781, 31 L. R. A. 608, 51 Am. St. Rep. 380; Campbell v. Campbell, 246 Ala. 107, 19 So.2d 354, 355, 356, 155 A. L. R. 130; Lindsay v. Lindsay, 226 Ill. 309, 80 N.E. 876; Dickerson v. Dickerson, Tex. Civ. App., 207 S.W. 941, 942; Ayala v. Ayala, 182 La. 508, 162 So. 59. It is always a question of intent, and we are strongly persuaded that defendant's brief visits in no manner demonstrate he had any thought of resuming the marital duties which he had for so long "abnegated."

III.   Defendant urges in argument that plaintiff is insufficiently corroborated. Adequate corroboration appears in the testimony of Mrs. Zola Truesdale, a next-door neighbor, and of the daughter, Kathleen.

IV.   No error is predicated upon the disposition of the homestead and the household furniture as made by the trial court. While defendant had, several years before the commencement of this action, conveyed to plaintiff a property in Fayette, Iowa, and had furnished the first seven hundred dollars of the purchase price of the home in Fairfield, she had the burden of meeting the mortgage payments and other expenses of these

properties, and had at the time of the divorce hearing received little if any return from them. In fact, she was still paying on the mortgage on the home. In view of defendant's long failure to contribute any substantial support to his family we think the trial court's award to the plaintiff was equitable.—Affirmed.

All JUSTICES concur.