# IN THE SUPREME COURT OF IOWA

No. 21–1968

Submitted January 19, 2023—Filed April 7, 2023

**ROGER BLASDELL,**

    Appellee,

vs.

**LINNHAVEN, INC.** and **ACCIDENT FUND NATIONAL INSURANCE COMPANY/UNITED HEARTLAND,**

    Appellants.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.

An employer seeks further review from a court of appeals decision that affirmed the district court's ruling in favor of the claimant in a workers' compensation proceeding. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Christensen, C.J., delivered the opinion of the court, in which Waterman, Mansfield, and McDermott, JJ., joined. McDonald, J., filed a dissenting opinion, in which Oxley, J., joined. May, J., took no part in the consideration or decision of the case.

Laura Ostrander, Lansing, Michigan, for appellants.

Thomas M. Wertz and Mindi M. Vervaecke of Wertz Law Firm, Cedar Rapids, for appellees.

**CHRISTENSEN, Chief Justice.**

We must decide when a married couple's separation results in spousal desertion within the meaning of Iowa Code section 85.42(1)(*a*) (2017). Almost two and a half years into their marriage, the wife in this case left the marital home in Delhi in search of employment elsewhere. She ultimately accepted a position in Cedar Rapids and moved in with a family friend. Meanwhile, the husband and the wife's son from a previous relationship moved for financial reasons to Manchester, where the husband worked. The husband and wife never lived together again, but they remained in contact, supported each other financially, and never sought a divorce.

A year after her move, the wife was permanently and totally disabled as a result of a work injury and was awarded workers' compensation benefits. She passed away from an overdose of prescription medication approximately four years later. When the husband filed a claim for burial expenses and death benefits as the surviving spouse, his wife's employer and her insurer claimed he was not entitled to those benefits under Iowa Code section 85.42(1)(*a*) because he had willfully deserted his wife without any fault by her. The workers' compensation commissioner agreed.

On judicial review, the district court reversed the workers' compensation commissioner's decision, concluding it was not supported by substantial evidence. The court of appeals affirmed the district court, and we granted the employer's application for further review. For the reasons explained below, we affirm the district court decision that there was not substantial evidence to

support a finding that the husband deserted his wife without fault by her under Iowa Code section 85.42(1)(*a*).

## I. Background Facts and Proceedings.

Roger and Heather Blasdell long held a nontraditional relationship that dates back to at least 1998. In March 1999, Heather gave birth to their daughter, whom Heather and Roger placed in a guardianship with a maternal relative who they felt was better able to address their daughter's needs, including special health issues. They eventually married on August 23, 2008, and lived together with Heather's teenage son from a previous relationship until January 2011, when they separated largely for financial reasons. Heather had just lost her job, and Roger could not afford their rent alone in Delhi. Unable to find another job in the area, Heather moved to Clinton for a few months with only her clothes and vehicle. Shortly thereafter, she moved in with a family friend in Cedar Rapids and started a position there with Linnhaven, Inc., as a direct care provider. Roger stayed in the Delhi home with Heather's son for three to four months after Heather left, but he could not afford to continue paying the rent. Consequently, Heather's son moved with Roger to Manchester, where Roger worked.

Roger began dating another woman, Angela, in Manchester, and Heather's son later moved in with Heather in Cedar Rapids but continued to commute with an uncle to attend school in Manchester. In 2011 and 2012, Roger filed his taxes as "married filing separately." He did not list Heather as a spouse on his 2012 Iowa return and listed himself as single on a W-4 form in 2011 and 2015.

On November 5, 2012, Heather sustained an injury while working at Linnhaven, Inc., and sought workers' compensation benefits from Linnhaven, Inc., and its insurer, Accident Fund National Insurance Company/United Heartland (collectively Linnhaven). Heather's marital status was not an issue in the workers' compensation proceedings, but she stated during a January 21, 2014 deposition that she was legally married to Roger. However, she explained that the pair were separated and had not divorced because of "money." A deputy workers' compensation commissioner ultimately determined Heather was permanently disabled as a result of the work injury and awarded Heather workers' compensation benefits for as long as she remained permanently and totally disabled. The workers' compensation commissioner delegated a deputy workers' compensation commissioner with the authority to issue a final agency decision, which subsequently affirmed the prior decision.

On September 9, 2016, Heather died from an overdose of a mix of prescription medications quetiapine (Seroquel) and zolpidem (Ambien).[1] Roger filed a claim for death benefits as Heather's surviving spouse and sought reimbursement for Heather's burial expenses, which he had paid. Linnhaven asserted that Roger was barred from receiving death benefits under Iowa Code section 85.42(1)(a), which states: "When it is shown that at the time of the injury the surviving spouse had willfully deserted the deceased without fault of the

---

[1]Whether Heather's death was accidental or intentional is not an issue in this appeal.

deceased, then the surviving spouse shall not be considered as dependent in any degree."

In a deposition on April 3, 2018, Roger stated that Heather was listed as his emergency contact at work, the beneficiary of his life insurance policy, and as a driver on his car insurance for two vehicles at the time of her 2012 injury. He described his relationship with Heather as "kind of on and off." According to Roger, Heather would stay with him occasionally, and they continued to see each other "[a]lmost weekly" even though they did not have a sexual relationship.

Roger's former girlfriend, Angela, was deposed on the same day. Angela reported that she had dated Roger from July 2011 until July 2017 and lived with him in a home they rented together from around 2015 until they ended their relationship. She knew Roger was still legally married to Heather and continued to communicate with Heather throughout her relationship with Roger. When asked how often Roger would communicate with Heather, Angela stated, "It didn't come up too much, so I -- I would say maybe like once a month." Angela was not aware of any financial support that Roger may have provided to Heather.

Roger's claim went to hearing on May 15, 2018. Roger's testimony was similar to his deposition testimony. He reiterated that he and Heather separated in January 2011 primarily for financial reasons but remained in contact. When asked whether he recalled providing Heather with financial assistance after her injury, Roger testified that he "would give her money almost weekly, anywhere from 50- to 100-dollars." In contrast, he rarely received financial assistance from Heather.

Heather's son testified next. He lived with Heather at the time of her injury and recalled Heather and Roger maintaining "frequent conversations throughout the week" during that time period. He elaborated that he did not "necessarily know what they talked about" but knew "that they were in contact with each other." He continued, "And throughout -- after her injury, I had been present a few different times when they had met up with each other." When they met up, Heather's son recalled, "Sometimes it was just a -- have a conversation and check up and see how everybody was doing. Sometimes it was Roger loaning my mom money to help out with bills."

The deputy workers' compensation commissioner who presided over the hearing became unavailable before issuing a decision, so the workers' compensation commissioner authorized another deputy to issue a proposed decision. This deputy relied on the record and posthearing briefs in concluding that "Roger had willfully deserted Heather without fault by Heather as of 2011—before her underlying work-related injury"—and was thus not entitled to death benefits under Iowa Code section 85.42(1)(*a*). Roger requested a rehearing based on the change in deputy commissioners after his hearing, arguing witness demeanor was a substantial factor in the case. A deputy commissioner acting with authorization from the commissioner granted this request "in an effort to maintain the integrity of the contested case process before the agency."

The deputy who issued the first proposed decision presided over Roger's new hearing in July 2020. No new exhibits were permitted, and only Roger testified, repeating much of what he had already stated in his deposition and the

first hearing. The deputy found Roger "to be a generally credible witness" but again determined that Roger was not entitled to death benefits because he willfully deserted Heather. On appeal, a deputy commissioner acting with the commissioner's authorization agreed. The deputy bolstered this final agency decision with the following summary:

> The record indicates that Roger and Heather intended to terminate their marriage relationship in January 2011. The record indicates Heather moved out of the house she shared with Roger at that time. Shortly after that in early 2011, Roger began a relationship with [Angela]. This was a relationship that lasted at least five years and included several years of cohabitation. The record reflects that after January 2011, Roger and Heather never lived together or had any sexual relationship. Given this record, it is found that Heather and Roger ended their marital relationship in January 2011. It is also found that Roger willfully and intentionally separated from Heather at that time.
>
> As noted in the record, the separation between Heather and Roger occurred due to financial reasons. Given this fact, it is found that Roger's willful separation from Heather was without the fault of Heather.

Roger petitioned for judicial review before the district court. The district court reversed the agency's decision, noting the agency's "finding that both parties intended to end the marriage suggests that Heather is not without fault." The district court remarked that both parties and the deputy commissioner "seem to treat the questions of whether [Roger] and Heather were married at the time of injury and whether [Roger] abandoned Heather as one in the same[;] [t]hey are not." (Footnote omitted.)

In concluding Roger lacked the requisite intent to desert Heather, the district court cited the following facts:

> Claimant remained in the marital home with Heather's child. Additionally, according to unrefuted testimony, Claimant attempted to contact Heather several times. Heather's son testified that Claimant was successful, while [Angela] stated Claimant was unsuccessful in contacting Heather. Finally, while true that Claimant listed himself as single on his 2011 W4 form, Claimant stated on his 2011 and 2012 taxes that his marital status was "married fil[ing] separately."

(Citations omitted.)

The district court remanded the case to the commissioner for a ruling on whether Heather's death met the willful-injury exception under Iowa Code section 85.16 to bar Roger from recovering survivor's benefits. *See* Iowa Code § 85.16. Linnhaven appealed, and we transferred the case to the court of appeals, which affirmed the district court's ruling. We subsequently granted Linnhaven's application for further review.

**II. Standard of Review.**

Iowa Code chapter 17A guides our judicial review of agency decision-making to determine whether we reach the same result as the district court. *Chavez v. MS Tech., LLC*, 972 N.W.2d 662, 666 (Iowa 2022). In this case, we are asked to determine whether the commissioner erred in concluding that Roger deserted Heather without fault on Heather's part under Iowa Code section 85.42(1)(*a*). This issue presents a mixed question of law and fact: the operative facts that gave rise to the desertion claim present a question of fact, while the question of law is inherent in the commissioner's decision on whether those facts support a conclusion that Roger "had willfully deserted [Heather] without fault of [Heather]" at the time of her injury. Iowa Code § 85.42(1)(*a*); *see Meyer v. IBP, Inc.*, 710 N.W.2d 213, 218 (Iowa 2006).

We "are bound by the commissioner's resolution of the first question—finding the operative facts from the evidence presented—if supported by substantial evidence in the record as a whole." *Meyer*, 710 N.W.2d at 218. In contrast, "the application of the law to the facts . . . can be affected by other grounds of error such as erroneous interpretation of law; irrational reasoning; failure to consider relevant facts; or irrational, illogical, or wholly unjustifiable application of law to the facts." *Id.* Accordingly, "[w]hen the agency exercises its discretion based on an erroneous interpretation of the law, we are not bound by those 'legal conclusions but may correct misapplications of the law.' " *Id.* at 219 (quoting *Stroup v. Reno*, 530 N.W.2d 441, 443 (Iowa 1995) (en banc)).

**III. Analysis.**

In addition to arguing the district court erred in finding Roger did not desert Heather, Linnhaven maintains: (1) we should affirm the district court's conclusion that the commissioner's designee could issue the final agency decision, and (2) we should find the doctrine of estoppel does not bar Linnhaven from raising the defense of spousal desertion. Neither of those requests is properly before us. Roger did not cross-appeal the district court's conclusion that the commissioner's designee could issue the final agency decision, so there is no dispute over this matter for us to resolve. Likewise, Roger is not claiming Linnhaven is estopped from raising the spousal desertion defense, and the district court declined to address the issue. Accordingly, we only address whether the district court erred by finding Roger did not desert Heather.

In relevant part, Iowa Code section 85.31(1)(*a*) states, "When death results from the [workplace] injury, the employer shall pay the dependents who were wholly dependent on the earnings of the employee for support at the time of the injury." Iowa Code section 85.42(1)(*a*) establishes that a surviving spouse "shall be conclusively presumed to be wholly dependent upon the deceased employee" unless "it is shown that at the time of the injury the surviving spouse had willfully deserted the deceased without fault of the deceased, then the surviving spouse shall not be considered as dependent in any degree." Here, neither party disputes that Roger and Heather were still legally married at the time of Heather's injury. Additionally, Iowa does not recognize common law divorce. *See In re Est. of Weems'*, 139 N.W.2d 922, 924 (Iowa 1966) ("[W]e know of no such thing as a common law divorce, or divorce resting on nothing more secure than bigamy."). *See generally* Iowa Code ch. 598 (governing the dissolution of marriage). So, the only question here is whether Roger willfully deserted Heather without fault by her. *See* Iowa Code § 85.42(1)(*a*).

We have seldom had the opportunity to examine the spousal desertion exception. In fact, the pertinent Iowa precedent analyzing spousal desertion in workers' compensation proceedings is from over a hundred years ago in *James Black Dry Goods Co. v. Iowa Indus. Com'r*, 173 N.W. 23, 24 (Iowa 1919). There, the husband left the marital residence after years of marriage due to "serious financial difficulty" and traveled to find work. *Id.* Yet the husband and wife met periodically, and the husband mailed money to the wife. *Id.* at 25.

We borrowed from fault divorce cases in concluding that the following elements must exist to show desertion: (1) "the cessation of the marriage relations," (2) "the intent to desert," (3) "a continuance of the desertion during the statutory period," and (4) "the absence of consent or misconduct of the party alleged to have been deserted." *Id.* at 24. In considering these elements, we held that the wife had not deserted her husband simply because the parties agreed to live apart. *Id.* at 25. As we explained, "[S]eparation and desertion are not synonymous." *Id.* Rather,

> the act [of desertion] is willful when there is a design to forsake the other spouse willfully or without cause, and thereby break up the marital union, deliberate intent to cease living with the other as spouse, abnegation of all duties of the marriage relations, the actual ceasing of cohabitation, and the intent to desert.

*Id.* Perhaps most importantly, we approvingly cited Iowa caselaw for the principle that "if plaintiff consented to defendant living apart from him, there was no desertion." *Id.*; *see also Day v. Day*, 50 N.W. 979, 980 (Iowa 1892) ("If the separation was by mutual agreement, there could have been no willful desertion, and hence no divorce on that ground.").

With that legal background in mind, the district court correctly determined Roger did not intend to desert Heather—especially without fault on Heather's part—under Iowa Code section 85.42(1)(*a*). Just as the husband in *James Black Dry Goods Co.* left the marital residence due to "serious financial difficulty" and traveled to find work, Heather left the Delhi residence that she shared with Roger and her son to find work. *See James Black Dry Goods Co.*, 173 N.W. at 25. Like the husband and wife in *James Black Dry Goods Co.*, Heather and Roger, too,

maintained contact and helped each other financially. *See id.* at 24–25. Although Roger engaged in a romantic relationship with another woman during this time, there is no exception under the statute precluding a surviving spouse from receiving workers' compensation benefits for adultery. *See* Iowa Code § 85.42(1). Nor is it within our authority to create such an exception. *See* The Federalist No. 78, at 402 (Alexander Hamilton) (George W. Carey & James McClellan eds., Gideon ed. 2001) ("[Courts] may truly be said to have neither force nor will, but merely judgment."). Significantly, Roger started this relationship months after Heather chose to leave the marital home and move to Clinton and then Cedar Rapids.

Linnhaven argues this case is distinguishable because the couple in *James Black Dry Goods Co.* exchanged "a number of letters and postcards," while Roger "was only able to produce a single page of messages from [Heather]." It also argues there is not substantial evidence that Roger gave Heather money. True, Roger only produced a single page of electronic messages from Heather. But unlike the husband and wife in the 1919 *James Black Dry Goods Co.* case, Roger and Heather had various means to interact beyond paper mailing—be it by phone, text message, social media updates, and the like. They also were able to travel to see each other by vehicle frequently and with relative ease, which was not the case in the early 1900s when the husband and wife in *James Black Dry Goods Co.* lived apart in different regions of the country. Anyway, Linnhaven's criticism of Roger for not providing more documentation to support his claims about his relationship with Heather is misplaced because Roger has the

statutory benefit of being presumed wholly dependent upon Heather as her surviving spouse. *See* Iowa Code § 85.42(1)(*a*).

Further, despite Linnhaven's many attempts to cast doubt on the credibility of Roger's testimony in its appellate brief, the deputy commissioner's rehearing decision specifically addressed Roger's credibility. As the decision summarized,

> Ultimately, given Roger's consistent testimony throughout the entirety of the case, I find Roger's behavior and outward manner to be forthcoming and straightforward. At no point on rehearing was I given the impression that he was attempting to conceal information. I therefore find him to be a generally credible witness and I find his demeanor reflects positively on his case.

"It is the commissioner's duty as the trier of fact to determine the credibility of the witnesses, weigh the evidence, and decide the facts in issue." *Arndt v. City of Le Claire*, 728 N.W.2d 389, 394–95 (Iowa 2007). The deputy commissioner was certainly in a better position to judge Roger's credibility by participating in the hearing and observing Roger's testimony live than we are in our review of the transcript and record as a whole.

Notably, Linnhaven did not argue in its appellate brief that we should apply a standard other than that set forth in *James Black Dry Goods Co.* to determine whether Roger deserted Heather under Iowa Code section 85.42(1)(*a*). Nor does it argue that the statutory spousal desertion exception allows for the deprivation of death benefits in cases of mutual abandonment between spouses. Instead, Linnhaven only sought to differentiate this case factually from *James Black Dry Goods Co.*

Now, Linnhaven tries to take a different route in its application for further review by arguing that "the Iowa Court of Appeals erred in finding the appellee did not abandon his spouse because the legal principles of spousal abandonment have changed since the *James Black Dry Goods Co.* case was issued during a time where at fault divorce was the legal standard in Iowa." However, Linnhaven does not elaborate on this claim further. In any event, it is well established that "[w]e generally will not consider issues raised for the first time in a reply brief in an appeal, let alone in an application for further review." *State v. Warren*, 955 N.W.2d 848, 867 (Iowa 2021) (quoting *State v. Shackford*, 952 N.W.2d 141, 147–48 (Iowa 2020)).

Moreover, although our laws governing marriage have since changed, it still generally remains the case in workers' compensation cases that "[m]ere separation of a husband and wife, by itself, has not affected the right of a surviving spouse to workers' compensation benefits." 82 Am. Jur. 2d *Workers' Compensation* § 166, at 192–93 (2013). Many states continue to examine the same elements set forth in *James Black Dry Goods Co.* to determine whether the surviving spouse willfully deserted the decedent. *See, e.g., Robinson Foundry, Inc. v. Moon,* 503 So. 2d 863, 865 (Ala. Civ. App. 1987) ("If a wife is living apart from her husband and if this separation is a result of the husband's deserting the wife, she may still be constructively living with him and entitled to benefits."); *Morrison ex rel. Bryant v. Indus. Comm'n,* No. 1 CA–IC 09–0021, 2009 WL 4547027, at *3 (Ariz. Ct. App. Dec. 3, 2009) ("Voluntary abandonment is based on the surviving wife's state of mind and is a question of fact to be

determined by the ALJ from the wife's 'testimony coupled with the surrounding circumstances and past history of the parties.'" (quoting *Clark v. Indus. Comm'n*, 460 P.2d 22, 25 (Ariz. Ct. App. 1969))); *Midway Landfill, Inc. v. Indus. Comm'n*, 304 N.E.2d 607, 609 (Ill. 1973) ("Here, although the husband had knowledge of his wife's adultery, nonetheless he visited her, had marital relations with her, referred to her as his wife, discussed reconciliation with her, corresponded with her, and at no time sought to institute divorce proceedings to terminate the marriage relationship. In addition, the [wife] had not secured a divorce, had not remarried and was not living with [her paramour] at the time of her husband's death."); *In re Way v. J & J Log & Lumber Corp.*, 797 N.Y.S.2d 186, 186 (App. Div. 2005) ("[A]bandonment in th[e workers' compensation] context requires proof that the separation was voluntary, unjustified, nonconsensual and intended to be permanent."); *Rogers v. Univ. Motor Inn*, 405 S.E.2d 770, 773 (N.C. Ct. App. 1991) ("By the time of his death, the deceased had not stopped drinking. It would defy justice to require that the appellant endlessly subject herself to her husband's violent behavior and alcoholism in order to qualify as a widow under the Workers' Compensation Act."); *Tatum v. Tatum*, 736 P.2d 506, 509 (Okla. 1982) ("Although [the wife] didn't know why [her husband] left, she made it clear that he was always welcome home. . . . In the meantime, she maintained the home they previously occupied together and kept her job as a means of providing herself with a livelihood. She had not initiated a divorce suit nor, to her knowledge, had he brought one against her.").

For example, the Oklahoma Supreme Court rejected claims that a wife lost her statutory status as the surviving spouse and thus could not receive her husband's death benefits "because she failed either to pursue her husband with a view to bringing him back home or failed to follow him in his travels" after he left the marital home. *Tatum*, 736 P.2d at 508. Comparable to Heather's moves to establish employment in this case, the husband in *Tatum* "revealed a predisposition to wandering, short-term employment, discontent with jobs and instability." *Id.* Relevantly, the court observed, "The law would indeed be both [naïve] and unrealistic if it expected a wife to abandon her only precious possessions in a fruitless quest after an errant husband who had given no indication of his desire to return and stay." *Id.* In holding the wife was entitled to the deceased husband's death benefits as his statutory surviving spouse, the court cited facts similar to this case. *Id.* at 508–09.

Like the contact between Heather and Roger, the husband in *Tatum* "communicated with [his wife] several times. He even returned to see her on several occasions, but never to stay." *Id.* at 509. Likewise, neither of them ever sought a divorce. *Id.* Nevertheless, the husband entered into a relationship with another woman, Gloria, established a common household with Gloria and two of her children from another marriage, had a child with Gloria, and held himself out as Gloria's husband despite no legal marriage. *Id.* at 507. Yet the court rejected Gloria's claim that the wife was not entitled to the deceased husband's death benefits as his surviving spouse and remarked that the wife's "status as a

deserted spouse was not lost either by inaction or non-pursuit." *Id.* at 508–09. That is also the case here.

We acknowledge that much of the caselaw nationally analyzing the deserted spouse exception is based on an outdated view of marital relationships. By all appearances, Roger and Heather made a mutual decision to live apart and had an unconventional marriage at the time of Heather's 2012 injury. But the statutory language of Iowa Code section 85.42(1)(*a*) is clear that the spousal desertion exception only applies if at the time of Heather's injury, Roger had willfully deserted Heather *without fault by Heather*. This is where the dissent is misguided in accusing us of "go[ing] out of [our] way to defeat rather than uphold the agency's decision."

The agency's determination that Roger deserted Heather is not purely a factual finding in which we must only decide whether that decision was supported by substantial evidence. Rather, we must decide whether the agency correctly applied those facts to the law, which specifically asks whether Roger, as the surviving spouse, "willfully deserted [Heather] *without fault of* [*Heather*]" at the time of her injury. Iowa Code § 85.42(1)(*a*) (emphasis added). "When the agency exercises its discretion based on an erroneous interpretation of the law, we are not bound by those 'legal conclusions but may correct misapplications of the law.'" *Meyer*, 710 N.W.2d at 219 (quoting *Stroup*, 530 N.W.2d at 443). Here, the commissioner erroneously interpreted the law by conflating separation with desertion and ignoring Heather's fault in that separation. It is our job to correct that misapplication of the law.

The district court aptly summarized how the statute operates, explaining, "If Heather deserted [Roger], [Roger] would still be eligible for survivor's benefits. Likewise, if neither party deserted one another, [Roger] is eligible for survivor's benefits. If both parties deserted the marriage, then it cannot be said Heather is without fault, so [Roger] would still collect."

Based on the facts before us, we cannot say that Roger intended to desert Heather or that Heather is without fault for their separation. This is especially so considering Heather initiated the separation through her choice to leave Roger and her son in their marital home in pursuit of work in a different part of the state. "The law would indeed be both [naïve] and unrealistic if it expected [Roger] to abandon" his employment and home to follow Heather through multiple cities in her quest for work. *Tatum*, 736 P.2d at 508. Other facts supporting our conclusion include Heather and Roger's continued contact after Heather left, Roger's 2011 and 2012 tax filings that list his marital status as "married filing separately," and Roger's continued financial support of Heather at the time of her injury.

Accordingly, we agree with the district court that there is not substantial evidence to support the commissioner's finding that Roger deserted Heather without fault by her under section 85.42(1)(*a*). Because the final agency ruling concluded that Roger was not entitled to benefits under Iowa Code section 85.31(1)(*a*), it did not address Linnhaven's claim that the willful injury exception under Iowa Code section 85.16 bars Roger's recovery of the benefits. Thus, we

also agree with the district court's determination that remand is appropriate for the commissioner to make the factual findings necessary to decide this issue.

**IV. Conclusion.**

We affirm the district court's ruling and remand to the workers' compensation commission to determine whether the willful injury exception applies.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Waterman, Mansfield, and McDermott, JJ., join this opinion. McDonald, J., files a dissenting opinion, in which Oxley, J., joins. May, J., takes no part.

**McDONALD, Justice (dissenting).**

Under the Iowa Administrative Procedure Act (IAPA), this court "must 'broadly and liberally' apply the agency findings in order to uphold, rather than defeat, the agency's decision." *Stephenson v. Furnas Elec. Co.*, 522 N.W.2d 828, 831 (Iowa 1994) (quoting *Ward v. Iowa Dep't of Transp.*, 304 N.W.2d 236, 237 (Iowa 1981)). Contrary to the IAPA and our longstanding precedents interpreting the same, the majority seeks to defeat rather than uphold the agency's decision. The majority applies the incorrect standard of review and then compounds the error by incorrectly applying the incorrect standard of review. I respectfully dissent. I would vacate the decisions of the court of appeals and the district court and would affirm the agency's decision.

I.

The majority's first error is that it applies the wrong standard of review. *See generally Ripperger v. Iowa Pub. Info. Bd.*, 967 N.W.2d 540, 555 (Iowa 2021) (Mansfield, J., concurring in part and dissenting in part) (dissenting on ground that "[t]he majority has applied the wrong standard of review"). The majority states that desertion is a mixed question of law and fact, but the majority cites no authority for that proposition. There is a good reason for the majority's omission: the majority's statement regarding the standard of review is directly contrary to controlling and persuasive authority holding that desertion is solely a question of fact left to the finder of fact.

In the controlling case of *James Black Dry Goods Co. v. Iowa Industrial Com'r,* which the majority discusses at length, this court stated desertion is a "question[] of fact." 173 N.W. 23, 24 (Iowa 1919). *James Black Dry Goods Co.* went on to explain that in reviewing an administrative proceeding, this court does "not pass upon questions of fact," and if "the commissioner could have found, under the evidence, even though there was a conflict therein," desertion or no desertion, "then there is no question for this court to pass upon." *Id.*

The conclusion that desertion is a question of fact makes sense because desertion is a question of intent. "Desertion consists in the actual ceasing of cohabitation and the intent in the mind of the offending party to desert the other." *Nelson v. Nelson,* 68 N.W.2d 746, 748 (Iowa 1955) (quoting *Parker v. Parker,* 55 N.W.2d 183, 185 (Iowa 1952)). Desertion can be shown by "intent to cease living with the other as spouse," "abnegation of all duties of the marriage relation," and an intent "not to return." *Parker,* 55 N.W.2d at 185 (quoting *Tipton v. Tipton,* 151 N.W. 90, 92 (Iowa 1915)). As a question of intent, desertion "is a question of fact." *Conlin v. Conlin,* 144 N.W. 1005, 1008 (Iowa 1914).

*James Black Dry Goods Co., Nelson, Parker,* and *Conlin* are not outliers. Other courts also hold desertion is a question of fact left to the discretion of the agency or the finder of fact. *See, e.g., Blache v. Blache,* 160 P.2d 136, 144 (Cal. Dist. Ct. App. 1945) (stating desertion "is entirely a question of fact"); *Casale v. Casale,* 86 A.2d 568, 570 (Conn. 1952) (stating desertion is intent to cease cohabitation with no mind to renew and "the question of intent is always a question of fact" (quoting *Bennett v. Bennett,* 43 Conn. 313, 318 (1876))); *Stark v.*

*State Indus. Acc. Comm'n*, 204 P. 151, 158 (Or. 1922) (stating question of desertion for compensation benefits "was a question of fact"); *Roanoke Belt, Inc. v. Mroczkowski*, 455 S.E.2d 267, 271 (Va. Ct. App. 1995) (citing *Kelly v. Pendleton Constr. Co.*, 28 S.E.2d 621, 623 (Va. 1944), for the proposition that "determination of wife's desertion of marriage abrogating dependency . . . was question of fact"); *Barker v. Dayton*, 28 Wis. 367, 376 (1871) (stating desertion "was a question of fact").

Because desertion is a question of fact, the correct standard of review under the IAPA is substantial evidence review. The legislature has "vested the commissioner with the discretion to make factual determinations." *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 889 (Iowa 2014). Courts are bound by these factual determinations "if they are supported by 'substantial evidence in the record before the court when that record is viewed as a whole.' " *Id.* (quoting Iowa Code § 17A.19(10)(*f*) (2009)). Substantial evidence is "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(*f*)(1) (2017). "Evidence is not insubstantial merely because different conclusions may be drawn from the evidence." *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011). So long as there is some evidence to support the finding actually made, a reviewing court must affirm the agency's finding of fact "even though [the court] may have drawn a different conclusion as fact finder." *Id.*

The agency's finding that Roger deserted Heather is supported by substantial evidence and should be affirmed. The agency found that Heather moved and Roger did not follow her. After Roger decided to not move with Heather, Roger began a relationship with another woman "that lasted at least five years and included several years of cohabitation." Roger and Heather never had a sexual relationship after they ceased living together, and there is no evidence in the record of his intent to resume a marital relationship with Heather. It is well established that a person who ceases cohabitation with his or her spouse and cohabits with another has objectively demonstrated an intent to desert the marital relationship. *See, e.g.*, *Redditt v. McDonald's Rest.*, 990 P.2d 759, 762 (Kan. Ct. App. 1999) ("[C]ohabitation with another may be indicative of a changed character in the spousal relationship." (quoting *Tatum v. Tatum*, 736 P.2d 506, 509 (Okla. 1982))); *Tatum*, 736 P.2d at 509 (stating "cohabitation with another" is "outward recognition that the marriage relationship had come to an end"); *In re Est. of Talerico*, 137 A.3d 577, 582 (Pa. Super. Ct. 2016) (recognizing state supreme court had held wife's cohabitation with another man constituted "open disregard" of marital relationship and thus constituted desertion) (quoting *In re Crater's Est.*, 93 A.2d 475, 477 (Pa. 1953)); *Petachenko v. Petachenko*, 350 S.E.2d 600, 602 (Va. 1986) (discussing lack of cohabitation and desertion).

## II.

The majority's second error is that it incorrectly applies the incorrect standard of review. Even if desertion constituted an application of law to facts, as the majority contends, this court is still required to afford the agency great

deference in reviewing its application of law to facts. But the majority affords the agency no such deference here.

"The legislature clearly vested the agency with the application of the law to the facts." *Drake Univ. v. Davis*, 769 N.W.2d 176, 183 (Iowa 2009) (citing Iowa Code §§ 86.14–.24 (2003)). Our review of an agency's application of law to facts is thus incredibly deferential. "We are required to give the agency appropriate deference." *Id.* (citing Iowa Code § 17A.19(11)(*c*)). When a party "challenges the agency's application of law to facts, we will not disrupt the agency's decision unless it is 'irrational, illogical, or wholly unjustifiable.' " *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 526 (Iowa 2012) (quoting *Larson Mfg. Co. v. Thorson*, 763 N.W.2d 842, 857 (Iowa 2009)).

> A decision is "irrational" when it is "not governed by or according to reason." *Webster's Third New International Dictionary* 1195. A decision is "illogical" when it is "contrary to or devoid of logic." *Id.* at 1127. A decision is "unjustifiable" when it has no foundation in fact or reason. *See id.* at 2502 (defining "unjustifiable" as "lacking in . . . justice"); *id.* at 1228 (defining "justice" as "the quality or characteristic of being just, impartial or fair"); *id.* (defining "just" as "conforming to fact and reason").

*Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 432 (Iowa 2010). The drafter and leading expert on the IAPA, Professor Bonfield, explained that this standard of review is essentially an arbitrary-and-capricious standard of review. *Id.*; *cf. Iowa Farm Bureau v. Env't Prot. Comm'n*, 850 N.W.2d 403, 432 (Iowa 2014) (discussing Professor Bonfield's work in this area and describing him as the "leading authority on administrative procedure law").

The agency's determination that Roger deserted Heather and was not entitled to death benefits was not wholly arbitrary and capricious. The limits of

reasoned judgment are determined by the purpose of the statute at issue. This statute was intended to provide death benefits to "dependents who were wholly dependent" upon the wage earner. Iowa Code § 85.31(1)(*a*) (2017). Included among these wholly dependent persons is the nondeserting "surviving spouse" of the wage earner. Iowa Code § 85.42(1)(*a*). The agency's determination that Roger—a working man, who was in no way financially dependent on his spouse, who was not cohabiting with his spouse, and who was instead living with another woman—was not a wholly dependent spouse entitled to spousal death benefits is rational and reasonable. Indeed, the agency's determination that a financially independent man who was living with another woman was not a wholly dependent spouse is better reasoned and better supported by the controlling and persuasive precedents than the majority's contrary conclusion.

### III.

"The administrative process presupposes judgment calls are to be left to the agency. Nearly all disputes are won or lost there." *Sellers v. Emp. Appeal Bd.*, 531 N.W.2d 645, 646 (Iowa Ct. App. 1995) (citation omitted). This court is "not free to interfere with any agency finding where there is a conflict in the evidence or when reasonable minds might disagree about the inference to be drawn from the evidence, whether it is disputed or not." *Stephenson*, 522 N.W.2d at 831. Instead, this court "must 'broadly and liberally' apply the agency findings in order to uphold, rather than defeat, the agency's decision." *Id.* (quoting *Ward*, 304 N.W.2d at 237). The majority goes out of its way to defeat rather than uphold

the agency's decision. The majority's approach is contrary to statute, controlling precedents, and persuasive precedents. I respectfully dissent.

Oxley, J., joins this dissent.